THE STATE OF OHIO, APPELLEE, *v.* MOORE, APPELLANT.

[Cite as State *v.* Moore (1988), 40 Ohio St. 3d 63.]

(No. 87-1709—Submitted September 28, 1988—Decided December 14, 1988.)

timely and proper discovery request, all recorded statements made by such defendant. Further, if such a violation is found, it must be determined whether the violation was prejudicial to the defendant in order to avoid the effect of the harmless-error rule.

Crim. R. 16 provides in pertinent part:

"(A) Demand for discovery. Upon written request each party shall forthwith provide the discovery herein allowed. * * *"

It is uncontroverted that appellant made a proper and timely motion for discovery pursuant to Crim. R. 16(A). Crim. R. 16(B) sets forth the types of information available to a defendant upon request. Specifically, Rule 16(B) provides:

"Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure.

"(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i) *Relevant written or recorded statements made by the defendant or co-defendant or copies thereof.]*" (Emphasis added.)

Appellee argues that subdivision (i) is limited to those recorded statements relevant to the subject matter of the charges presented. The court of appeals agreed with the appellee and ruled that since the July 10 taped conversation was not relevant to the state's case in proving the charges against appellant, the tape recording was not discoverable by the appellant.

*Stephen E. Keister,* prosecuting attorney, and *Douglas E. Koch,* for appellee.

*Sheldon S. Wittenberg,* for appellant.

DOUGLAS, J. In this case, we are called upon to decide whether a prosecutor has violated Crim. R. 16 by not producing, pursuant to a defendant's

Appellee cites Evid. R. 401 as support for its position that only statements regarding the subject matter of the charges presented are discoverable. Evid. R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

A statement is relevant only when it is of consequence to the outcome of the action. The state, however, misconstrues this rule, maintaining that unless the recorded statement entails the actual commission of the crime or specifically refers to the offense charged, the statement is neither relevant nor discoverable. In particular, appellee argues that the appellant's July 10, 1985 recorded statement did not refer to the June 5, June 6 and June 18 offenses. Appellee reasons that the July 10 statement did not contain direct evidence of a type which might cause a jury to conclude more probably than not that the appellant was guilty of the three charged offenses. Essentially, the state is asking this court to rule that a statement is only relevant if it is direct evidence of the offense with which the defendant is charged. This we decline to do.

As appellee suggests, material, such as a recorded statement which comprises direct evidence of a claim against a defendant, is relevant. However, relevant evidence is not limited to merely direct evidence proving a claim or defense. Rather, circumstantial evidence bearing upon the probative value of other evidence in the case can also be of consequence to the action. For example, the evidence establishing or impeaching the credibility of witnesses is of consequence to the action because it might determine whether the jury believes a particular witness. Herein, the July 10 tape-recorded threat by appellant was played by the prosecution to impeach the appellant's credibility after he had denied on cross-examination that he had ever had a July conversation with the undercover informant, Shanks.

Clearly, this recorded statement was relevant within the definition of Evid. R. 401, for it had a tendency to make Moore's truthfulness less probable than it would have been without the statement. Obviously appellant's credibility was of consequence to the charge. Although the July 10 statement was not relevant as direct evidence, it was relevant as circumstantial evidence to impeach the credibility of appellant.

Evid. R. 402 provides that *all* relevant evidence is admissible, and evidence which is not relevant is not admissible. The state's claim that it did not intend to use the July 10 recorded statement in the prosecution of Moore is not dispositive of Moore's right to inspect his tape-recorded statements. Accordingly, the state's relevancy argument is unpersuasive.

Further, a number of federal courts have interpreted the analogous federal discovery provision and have adopted a broad construction of the rule.[1] The overriding premise is that a defendant's right to fundamental fairness in defending himself requires that

---

[1] Fed. R. Crim. P. 16(a)(1)(A) provides: "Statement of Defendant. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government * * *."

he have access to his relevant recorded statements. Certainly, we recognize that the federal courts are split as to the scope and impact of what relevant recorded statements are discoverable. Nevertheless, we are persuaded by the rationale found in those federal decisions wherein fairness to the defendant mandates a broad scope of discovery.

When faced with the issue of whether a defendant is entitled to discovery of his pre-arrest recorded statements, the Seventh Circuit Court of Appeals in *United States* v. *Isa* (1969), 413 F. 2d 244, at 246, stated:

"If the rulemakers had intended that the provision be applicable only to a recital of 'past occurrences' or dependent upon 'a showing of need,' they could have readily so stated."

The district court in *United States* v. *Sherwood* (W.D.N.Y. 1981), 527 F. Supp. 1001, stated that the Notes of the Advisory Committee on 1974 Amendments to Rules made disclosure of recorded statements by the defendant mandatory. Specifically, disclosure provides the defendant with enough information to make an informed decision as to a plea and it reduces the chances of prosecutorial surprise at trial. Accordingly, statements made by a defendant in an ongoing investigation are discoverable as they may assist the defendant in preparing his defense and planning defense strategy.

There can be no doubt that the Sixth Amendment, as it is applied to the states through the Fourteenth Amendment, provides that a defendant be afforded a fair trial. A defendant's full discovery of his relevant recorded statements serves to alleviate surprise, thereby preserving the right to a fair trial.

Appellant maintains that not only did the prosecution violate Crim. R. 16, but that the prosecution *wilfully* violated this discovery rule when it did not produce the July 10 recorded statements for appellant's inspection prior to trial. The record reveals, however, that appellant raised no objection to the playing of the tape before the jury. Furthermore, the trial judge could not have abused his discretion when there was no objection on which to rule. Nevertheless, the analysis in *State* v. *Parson* (1983), 6 Ohio St. 3d 442, 445, 6 OBR 484, 488, 453 N.E. 2d 689, 692, is instructive to measure the significance of prosecutorial violations of the discovery rule. The state's failure to provide discovery will not amount to reversible error unless there is a showing that the prosecution's failure to disclose was a wilful violation of Crim. R. 16, that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by admission of the statement.

While we accept the assertion of the state, made at oral argument, that failure to provide discovery of the tape in question was inadvertent, it is necessary to detail what the record reflects concerning the use by the prosecutor of the July 10 recorded conversation.

Immediately after Moore denied on cross-examination that he had had a July 10 conversation with Shanks, the prosecution, without even so much as a break to prepare for rebuttal, called as a witness Ralph Eversole who was the surveillance officer who recorded the conversation between appellant and Shanks. The pertinent part of the record involving Eversole's testimony shows:

"Mr. Wittenberg: The defense rest [*sic*], your Honor.

"The Court: Mr. Keister, any rebuttal witnesses?

"Mr. Keister: Yes, your Honor, I would call Ralph Eversole.

"Thereupon the State of Ohio called as a rebuttal witness, Ralph Eversole, who being previously sworn, testified as follows:

"Direct Examination

"By Mr. Keister:

"Q   Ralph, do you have an exhibit with you that I need to mark?

"A   Yes, Sir, I do.

"Thereupon counsel approached the bench and a conversation was held out of the hearing of the jury and reporter. Thereupon the reporter marked State's Exhibit #10.

"By Mr. Keister:

"Q   I hand you what has been marked as State's Exhibit #10, can you remove the item contained therein and identify it if you can?

"A   Yes, Sir. This is a Panasonic small tape removed from an evidence bag that was taped on July 10th, 1985 of this year between Joseph Shanks and Richard Moore."

Nothing in the record indicates that there was any hesitation on the part of, or delay requested by, the prosecution. It is clear from the record that the prosecution knew that Eversole would produce the July 10 tape. The prosecution apparently anticipated that on cross-examination appellant would deny the July 10 conversation with Shanks and immediately sought to impeach Moore's credibility with the tape recording. It does not appear from the record that this was an unexpected incident in which the prosecution scrambled to impeach the defendant's credibility. Rather, the prosecutor's withholding of the July 10 tape from defendant's discovery request clearly resulted in surprise to the defense.

Our next inquiry is whether disclosure of the tape would have benefited the defendant in preparing his defense. Appellant contends that had he been provided with foreknowledge of the July 10 recorded statement, he would have accepted the plea bargain previously offered him. Appellant further asserts that advance knowledge of the tape-recorded statement would have had a great impact on his decision to testify in his own behalf.

We agree with appellant that knowledge of the existence of the tape would have benefited him in planning his defense. Because the recording was used to impeach appellant's credibility, he was entitled to inspect the tape so he could make an intelligent decision as to whether to testify in his own behalf as the sole witness for the defense. Any evidence impeaching the credibility of the sole witness was of crucial relevance to appellant's defense. The right to plan an adequate trial strategy is precisely what the federal courts, in *Isa* and *Sherwood, supra,* recognized as the dominant reason for a broad scope of discovery.

Finally, we consider whether appellant was prejudiced by the admission of the undisclosed statement into evidence. The record indicates that Eversole identified the tape recording and summarized its contents before the tape was ever played. The record reflects the following:

"Mr. Keister: Would you play the tape?

"* * * Ralph, before the tape is begun, what was the nature of the conversation, as far as you could hear, from the Defendant?

"A   From the Defendant, himself, was that he was not going to take Joe Shanks to his supplier. He had sold Joe Shanks cocaine. He had sold him cocaine in the past, uh, the argument became heated with Mr. Moore telling Mr. Shanks that if he ever found out that he was a police officer or affiliated

with any type of police, he would shoot him, he'd kill him.

"Thereupon State's Exhibit #10 was played for the jury.

"Mr. Keister: No further questions."

As previously indicated, defense counsel did not object to the playing of the tape as irrelevant. In fact, at that moment in the trial it was highly relevant. Even if the tape had been excluded at the time it was offered, the damage had already been done. Eversole had identified the tape as a July 10 conversation between appellant and Shanks. Before the tape was played, it was obvious that the tape contained evidence incriminating to the appellant. Prejudice to appellant had occurred. Immediately after the tape was played, defense counsel requested a mistrial on the basis that the prosecution had violated the discovery rule. Appellant's motion was overruled.

Accordingly, we hold that pursuant to Crim. R. 16(B)(1)(a)(i), a defendant is entitled to discovery of relevant written or recorded statements made by him, and it is not within the province of the state to determine, and then to provide, only that which the state believes to be relevant to the defense. To permit such conduct would serve to undermine the purpose of the discovery rule and impinge on the defendant's right to a fair trial. Further, we find that this error was not harmless beyond a reasonable doubt.

The judgment of the court of appeals is reversed. This cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

MOYER, C.J., SWEENEY and H. BROWN, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. I respectfully dissent. Crim. R. 16 only requires the state to provide "[*r*]*elevant* written or recorded statements made by the defendant or co-defendant * * *." (Emphasis added.) The July 10 tape does not refer in any manner to the events surrounding the three drug trafficking charges against the defendant, nor does the tape contain any exculpatory material. The state did not use the tape in its case in chief; and, indeed, it was clearly inadmissible.

On direct examination defendant admitted knowing and talking with undercover agent Shanks during June 1985, the period of time when the three trafficking crimes allegedly occurred. Nevertheless, the following exchange took place on cross-examination without objection by defense counsel:

"Q: Did you ever have an occasion, specifically July the 10th of 1985, when Joe Shanks was down at you [*sic*] office — down at your house, to state to him that you would be willing to get him another half ounce of cocaine. It would be a thousand dollars, but there wasn't any way that you were going to let him meet with your supplier?

"A: What was the date you said?

"Q: Around July 10th.

"A: July 10th? No, Sir, I never talked to Joe Shanks on July 10th."

If defendant had truthfully admitted to talking with Shanks on July 10, any further inquiry regarding the substance of that conversation would have been improper. Consequently, if any part of the conversation had been put before the jury, it would have been subject to a motion to strike since the July 10 conversation had nothing to do with the crimes at issue.

Defendant's lie on the point at issue engendered the following ques-

tions, again without any objection from defense counsel:

"Q: Did you ever talk to him at any time in July, saying to him, in effect, I'll sell you the half ounce, but I won't take you to my supplier.

"A: No, Sir, I did not.

"Q: Did you ever have any conversation with Joe Shanks around that time when you said, 'If I find out you're a cop, I'll kill you?'

"A: No, Sir, I did not.

"[Q]: * * * No further questions."

The state correctly argues that it has no duty to anticipate that a defendant will commit perjury when it determines whether a statement may have some impeachment value. In *United States* v. *Gleason* (C.A. 2, 1979), 616 F. 2d 2, certiorari denied (1980), 444 U.S. 1082, the government was allowed to use a ten-year-old letter written by the defendant to impeach the defendant's truthfulness on cross-examination. The government had not produced the letter in response to defendant's Fed. R. Crim. P. 16 discovery request because the letter had not been deemed relevant by the government. The court stated:

"The Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony (if he decides to testify) will be, and then furnish him with otherwise irrelevant material that might conflict with his testimony." *Id.* at 25.

The problem with Crim. R. 16 is that the state can easily assess what is relevant to its case, but it cannot so easily ascertain what may be relevant if and when the defendant goes forth with his testimony. However, since the defendant was a party to the recorded statement, he certainly should have been aware of its contents. Production of the recorded statement apprises defendant that the state is also aware of the contents. In a perfect world perhaps we should assume that all recorded statements of a defendant are relevant *regardless* of the content thereof. But the common law most certainly does not place this burden on the state, nor does the language of the rule. See Annotation, Right of Accused in State Courts to Inspection or Disclosure of Tape Recording of His Own Statements (1981), 10 A.L.R. 4th 1092; Annotation, Exclusion of Evidence in State Criminal Action for Failure of Prosecution to Comply with Discovery Requirements as to Statements made by Defendants or Other Nonexpert Witnesses — Modern Cases (1984), 33 A.L.R. 4th 301.

However, even if there is a violation of Rule 16, "the trial court is vested with a certain amount of discretion in determining the sanction to be imposed * * *. The court is not bound to exclude such material at trial although it may do so at its option." *State* v. *Parson* (1983), 6 Ohio St. 3d 442, 445, 6 OBR 485, 487, 453 N.E. 2d 689, 691. We must, therefore, affirm the trial court's decision to admit the July 10 tape recording unless it was an abuse of discretion to do so. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 22, 514 N.E. 2d 394, 398 (citing *State* v. *Adams* [1980], 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149). Furthermore, "reversal of a conviction is warranted upon a showing of nonconstitutional error [for violation of Fed. R. Crim. P. 16] only if it is more probable than not that the error materially affected the verdict." *United States* v. *Bailleaux* (C.A. 9, 1982), 685 F. 2d 1105, 1115 (refusing to reverse conviction because of a Rule 16 violation) (citing *United States* v. *Valle-Valdez*

[C.A. 9, 1977], 554 F. 2d 911, 916, and *United States* v. *Walker* [C.A. 9, 1976], 538 F. 2d 266, 268-269).

In this case, the court and counsel had a discussion off the record just prior to the introduction of the tape and Detective Eversole's testimony concerning the conversation of July 10. Accordingly, we do not have any indication of what alternative sanctions for violation of Rule 16 were discussed, if any. The record reveals only that after the rebuttal witness testified and the state moved to admit State's Exhibit No. 10, the court invited defense counsel's objection. Defense counsel then made a motion for a mistrial which was overruled.

This court in *State* v. *Howard* (1978), 56 Ohio St. 2d 328, 10 O.O. 3d 448, 383 N.E. 2d 912, held that it was not reversible error when the trial court allowed, over objection, rebuttal testimony from a prosecution witness whose name had not been provided to the defendant as required by Rule 16. In *Howard,* the defendant on cross-examination had denied seeing his co-defendant for several weeks around the time of the murder-robbery for which defendant was being tried. The co-defendant was tried separately. The surprise rebuttal witness was the owner of a store which was robbed by the two co-defendants the day before the crime at issue in *Howard.*

Just as in *Howard,* the only purpose for admitting the July 10 tape and the rebuttal testimony of Eversole was to impeach Moore's credibility on cross-examination. Since the state had turned over other tape recordings, the defendant obviously was aware prior to trial that conversations between him and Shanks were recorded, and that Shanks and Eversole were potential witnesses.

The majority has granted the defendant a new trial because it reads the record as revealing that the prosecutor's withholding of discovery was wilful. I think the focus should be the blatant perjury of the defendant. Even so, given the language of the rule, the contents of the tape, and the failure of this court to rule that all statements of the defendant are relevant and are to be produced, I do not find the measure of prosecutorial misconduct which this court has defined as "conduct [which] deprives the defendant of a fair trial." *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 266, 15 OBR 379, 402, 473 N.E. 2d 768, 793.

Undoubtedly, the defendant was prejudiced to the extent that his truthfulness on cross-examination was impeached. However, this court found no abuse of discretion in the admission of rebuttal testimony in *Howard, supra,* or in *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 71 O.O. 2d 485, 330 N.E. 2d 708, to impeach the testimony of a defendant. In *Maupin,* this court stated: "As the United States Supreme Court observed in *Harris* v. *New York* (1971), 401 U.S. 222, a criminal defendant is privileged to testify in his own behalf or refuse to do so. If he takes the stand he is under an obligation to speak truthfully and accurately. We hold that the rebuttal *at least* was properly admitted as bearing on appellant's credibility." (Emphasis *sic.*) *Id.* at 480-481, 71 O.O. 2d at 489, 330 N.E. 2d at 714. In *Harris,* the Supreme Court held that evidence which is inadmissible in the prosecutor's case-in-chief is admissible for purposes of impeachment of a defendant upon rebuttal.

The facts of this case make inappropriate a reasonable claim of "ambush" by the prosecutor. Trial courts must be free to look at all the circumstances of a case and defendants should not be allowed to use the Criminal Rules as a shield for perjury. The

July 10 tape obviously did not constitute an indispensible part of the prosecution's case, and it served only to expose the defendant as a liar. The judge's action in admitting the tape was not unreasonable, arbitrary or unconscionable. Given the quality and quantity of the other evidence admitted, it is more probable than not that the error, if any, did not materially affect the verdict. Accordingly, I would affirm the court of appeals' ruling that the admittance of the tape and the rebuttal testimony was not an abuse of discretion.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.