## State
## v.
## CECOS International, Inc.
*[Cite as 7 AOA 543]*

Case No. CA89-06-049, CA89-06-050, CA89-06-51
Clermont County, (12th)
Decided September 4, 1990

Anthony J. Celebrezze, Jr., Ohio Attorney General, E. Dennis Muchincki, Charles R. Dyas, Jr., Philip E. Haffenden, and Shane Farolino, 30 East Broad Street, 25th Floor, Columbus, Ohio 43266-0410, and Donald W. White, Clermont County Prosecutor, 123 North Third Street, Batavia, Ohio 45103, for Plaintiff-Appellee

Arnold Morelli and John M. Isidor, Bauer, Morelli & Heyd Co., L.P.A., 1029 Main Street, Cincinnati, Ohio 45202-1295, for Defendant-Appellant, CECOS International, Inc.

Gerald S. Gold and John S. Pyle, Gold, Rotantori, Schwartz & Gibbins Co., L.P.A., 1500 Leader Building, Cleveland, Ohio 44114, for Defendant-Appellant, Browning-Ferris Industries, Inc.

James N. Perry and D. Shannon Smith, 601 Main Street, 3rd Floor, Cincinnati, Ohio 45202, for Defendant-Appellant

*Per Curiam.*

This matter is the latest in a series of civil and criminal appeals to this court stemming from the alleged discharge in 1984 of 27,000 gallons of contaminated water from a holding cell in the CECOS facility into a tributary of Pleasant Run Creek in Clermont County.[1] Defendant-appellant, Allan Orth, at the time this action arose, was environmental manager at the Clermont County hazardous waste disposal site operated by defendant CECOS International ("CECOS"). CECOS and its parent company, defendant Browning-Ferris Industries ("Browning-Ferris"), were licensed to operate a hazardous waste disposal facility in the state of Ohio.

This matter had its genesis in March 1985, when the state issued twenty-four count indictments against each of the above-mentioned parties and John Stirnkorb, an on-site supervisor at the facility. The indictments charged that each of the four had violated various state hazardous waste laws by pumping collected rainwater from an uncapped hazardous waste storage cell into a drainage ditch without first determining whether the water was contaminated. The case proceeded to trial in the Clermont County Court of Common Pleas in late 1988.[2]

On December 13, 1988, during the course of the trial, the state cross-examined Orth using "state's exhibit 94," a memorandum written by him which the state believed would impeach his prior testimony. The prosecution, apparently under the impression that this exhibit was not discoverable under Crim. R. 16(B)(1)(a)(i), failed to disclose to CECOS, Browning-Ferris, and Orth that this document would be used in cross-examination. The state claims that its interpretation of the law as it existed at that time was that the Crim. R. 16(B) (1) (a) (i) requirement that the prosecution disclose relevant written or recorded statements by the defendant(s) was limited to statements relevant to the subject matter of the charges. Indeed, at least one unreported appellate decision had so held. *State v. Moore* (Aug. 20, 1987), Van Wert App. No. 15-86-10, unreported.

However, on December 14, 1988, the day after the state's cross-examination of Orth, the Ohio Supreme Court reversed the Van Wert County Court of Appeals holding that "it is not within the province of the state to determine, and then to provide, only that which the state believes to be relevant to the defense." *State v. Moore* (1988), 40 Ohio St. 3d 63, syllabus. The court found that the prosecution's failure to disclose such evidence "will not amount to reversible error unless there is a showing that the prosecution's failure to disclose was a wilful violation of Crim. R. 16, that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or that the accused was prejudiced by admission of the statement." (Emphasis added.) *Id.* at 66.

Believing that the state had violated discovery rules by the introduction of state's exhibit 94, the defendants moved for a mistrial. The defendants expressed their conviction that the state had left them no choice but to seek a mistrial and that the prosecution had engaged in a course of conduct designed to secure that result.

Faced with the *Moore* decision, the trial court determined that the defense had been prejudiced by the state's failure to disclose state's exhibit 94. The court stated that "a taint in the record of potential constitutional dimension" resulted. However, the trial court did not find prosecutorial misconduct had occurred. The trial court then declared a mistrial. In addition to pointing out why the court believed manifest necessity dictated a mistrial, the court also expressed concern over its crowded docket. It was January; the trial had commenced in October, and the court apparently had not handled its normal docket during this time. The decision of the court declaring the mistrial reflected these concerns.

The state then undertook to retry CECOS, Browning-Ferris and Orth, which prompted their motions to dismiss on double jeopardy grounds. On May 4, 1989, the trial judge appointed by the Ohio Supreme Court to conclude the remainder of the case issued an opinion overruling the motions to dismiss. He agreed with the original trial judge that the actions of the prosecution had not been intended to goad the defense into seeking a mistrial, particularly since at the time of the Orth cross-examination legal authority existed to support the state's position. The appointed judge also found that the crowded docket comments were extraneous to the decision to declare a mistrial.

CECOS, Browning-Ferris and Orth appealed from the order denying the motion to dismiss on double jeopardy grounds. Stirnkorb, meanwhile, was convicted and has filed a separate appeal. See fn. 1, *supra.*

After filing briefs and presenting oral argument to this court on their positions, CECOS and Browning-Ferris reached a settlement with the state and agreed to withdraw their appeals to this court in this matter. The settlement, reached April 30, 1990, and approved by the trial court by a journal entry dated May 8, 1990, involved CECOS pleading guilty to one count of violating a state hazardous waste permit, for which CECOS has agreed to pay a $25,000 fine and to shut down its Clermont County disposal site. In exchange, the state has agreed to dismiss all remaining charges against CECOS and Browning-Ferris.

In fulfilling this court's obligations under App. R. 28, we order the dismissal of the appeal filed by CECOS, in the case numbered Clermont CA89-06-049, and Browning-Ferris, in the case numbered Clermont CA89-06-051. This still leaves the appeal filed by Orth, in the case numbered Clermont CA89-06-050.

Orth presents the following issues for review by this court:

"ISSUE NO. 1.

"When a mistrial is granted at Defendant's request, for numerous instances of prosecutorial misconduct in the face of repeated warnings by the Court, the reprosecution of Defendant is barred by double jeopardy considerations.

"ISSUE NO. 2.

"When a mistrial is granted sua sponte for the reason that the Court's docket is overcrowded and the Court has no further time for the case and is not granted for a manifest necessity, it is not granted at the Defendant's request, and reprosecution is barred by double jeopardy consideration.

"ISSUE NO. 3.

"Where a trial court grants the defendant's motion for a mistrial without ruling on the issue of whether a retrial is barred by double jeopardy considerations, the trial judge for the retrial of the case commits prejudicial error by giving deference to comments of the original trial court rather than making an independent finding."

## I.

Orth first argues that double jeopardy considerations bar retrial of his case, since the mistrial resulted from prosecutorial misconduct. The Double Jeopardy Clause of the Fifth Amendment, extended to the states by the Fourteenth Amendment, protects the right of the defendant to be free from repeated prosecutions for the same offense. *Oregon v. Kennedy* (1982), 456 U.S. 667, 671, 102 S.Ct. 2083, 2087; *United States v. Dinitz* (1976), 424 U.S. 600, 606, 96 S.Ct. 1075, 1079. Although mistrials granted at the request of the defendant do not generally result in a double jeopardy bar to retrial, where prosecutorial misconduct goads the defendant into seeking a mistrial, the "right [of the defendant] to have his trial completed by a particular tribunal" is subverted by the prosecution, and the Double Jeopardy Clause prevents retrial. *Kennedy, supra*, 456 U.S. at 672, 675-676, 102 S.Ct. at 2087, 2089, quoting *Wade v. Hunter* (1949), 336 U.S. 684, 689, 69 S.Ct. 834, 837. See also, *State v. Glover* (1988), 35 Ohio St. 3d 18, 20; *State v. Sage* (1987), 31 Ohio St. 3d 173, 186.

Orth argues that the prosecution engaged in a course of conduct designed to elicit the motion for mistrial. He alleges that the final decision by the trial court to declare a mistrial resulted not merely from the Crim. R. 16(B)(1)(a)(i) misunderstanding but also from repeated violations of criminal procedure and discovery rules by the prosecution throughout the course of the trial, to wit:

the repeated refusal of the state to disclose material "contained in the grand jury testimony of Mr. Treon and Mr. Scott," which Orth refers to as "Brady" material, prior to being ordered to do so by the court, witness tampering, and the presentation of perjured testimony. The trial court did issue various warnings to the state to proceed with caution, but it was not until the introduction of state's exhibit 94 that a mistrial occurred. Orth argues that the state's exhibit 94 incident must be viewed in light of a course of conduct designed to sabotage the trial and that the mistrial resulted from the granting of his previous motion for mistrial."

Under Kennedy, "the circumstances under which *** a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to -- the successful motion for a mistrial was *intended to provoke the defendant into moving for a mistrial*." (Emphasis added.)

Kennedy, 456 U.S. at 679, 102 S.Ct. at 2091. Thus, the state must have intended to provoke a mistrial in order for "goading" to be found. *Id.* The state argues that Orth fails to show this requisite intent on the part of the state to invoke a mistrial motion. Indeed, the state appears to have lacked any motive whatsoever for seeking a mistrial.[3]

Orth seeks to overcome this obstacle by directing this court to *Pool v. Arizona Superior Court* (1984), 139 Ariz. 98, 677 P.2d 261, in which it was stated that to invoke the double jeopardy bar to retrial, the prosecutorial misconduct must amount "to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal."[4] *Id.* Under *Kennedy*, the prosecution must intend to provoke a mistrial; under *Pool*, the prosecution may be indifferent as to the result of its acts so long as it knows those acts to have been improper.

The *Pool* test has not been adopted in Ohio, where the rule remains that the prosecution must specifically intend to have the trial culminate in a mistrial. *Glover, supra*, at 20. We believe the *Pool* test, if adopted by this court, would weaken the limited power constitutionally permitted the state in prosecuting criminal defendants. The *Pool* holding presumes an ideal trial where all evidence is clearly discoverable or non-discoverable. As demonstrated by the facts in the case at bar, the character of evidence is not always so clearly delineated -- and the law may change overnight. This is not to suggest that the prosecution should be permitted to run roughshod over established trial procedures so long as it lacks the intent to provoke a mistrial. However, since the unique facts of a given case must dictate the decision of a trial court whether to grant a mistrial, *Glover, supra*, at 19, we do not see the benefit in imposing an inflexible standard which could potentially punish the state for engaging in a course of conduct with the legitimate intent of vigorously pursuing a just conviction.

With this in mind, we turn to Orth's allegations that the mistrial resulted from his motion, and that the course of conduct of the prosecution forced him to seek a mistrial. We do not agree that state's exhibit 94 was "the straw that broke the camel's back." Rather than relying upon Orth's mistrial motion, the decision of the original trial court relies on the *Moore* deci-

sion. The court's assertion that the constitutional dimension of the taint in the record forces a mistrial implies a manifest necessity basis for mistrial. Under *Moore*, the trial court did not need to have found prosecutorial misconduct in order to determine that reversible error had occurred, since the court could also have based its conclusion on a finding that the defendants were prejudiced by the failure to disclose under Crim. R. 16(B)(1) (a)(i). Similarly, in the case *sub judice*, the failure of the state to provide discovery of Orth's statement could reasonably have been based upon the law as it existed at the time of cross-examination. Prejudice may have resulted, but it does not automatically follow that such prejudice was brought about by prosecutorial misconduct.

As a result, the state's failure to disclose Orth's statement prior to its use during cross-examination could not have been interpreted as the culmination of a course of conduct designed to provoke a mistrial. Double jeopardy does not operate as a bar to retrial under these facts.

## II.

Orth alternatively argues that if the trial court's declaration of a mistrial was *sua sponte* and based upon its crowded docket, double jeopardy bars retrial because a crowded docket does not constitute manifest necessity for a mistrial. The appointed trial judge rejected this argument, stating that the docket references were extraneous and that the Crim. R. 16 problem, outlined above, constituted the real basis for the mistrial.

We agree with the analysis presented by the appointed trial judge. While the crowded docket may not have provided the manifest necessity for a mistrial, it is clear that the holding in *Moore, supra,* did. The trial court's reference to its docket could not and, in fact, did not, provide a basis for the mistrial. Orth's second argument is without merit.

## III.

Finally, Orth argues that the second trial court erred in deferring to the decision of the first trial court rather than making an independent assessment of the conduct of the prosecution. This argument is clearly without merit under *Glover, supra,* in which the supreme court reversed this court's decision. In *Glover,* we had determined that the trial court lacked the required manifest necessity for granting a mistrial because the trial court acted upon a desire to protect a witness from an aggressive cross-examination. The supreme court found that the manifest necessity determination was discretionary on the part of the trial court, and that because "the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial," the appellate court is not entitled to make an independent assessment of the trial court's motives. *Id.* at 19.

The appointed judge, when considering the motion to dismiss, played a role equivalent to that of an appellate court since the motion to dismiss required the appointed judge to review the opinion of the first trial court. *Glover* indicates that the appointed judge properly deferred to the assessment of the original court as to whether a mistrial was warranted by the facts.

Based upon these considerations, we must affirm the decision of the Clermont County Court of Common Pleas denying Orth's motion to dismiss. We therefore remand the instant action for retrial to that court.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

JONES, P.J., HENDRICKSON and YOUNG, J.J., concur.

---

[1] See *State v. CECOS Internatl., Inc.* (May 26, 1987), Clermont App. No. CA86-03-017, unreported, reversed and remanded in *State v. CECOS Internatl., Inc.* (1988), 38 Ohio St. 3d 120; *State, ex rel. Celebrezze, v. CECOS Internatl., Inc.* (Mar. 19, 1990), Clermont App. No. CA90-01-003, unreported; *State v. Stirnkorb* (Sept. 4, 1990), Clermont App. Nos.CA89-08-076 and CA89-11-098, unreported.

[2] After the state rested, all four defendants moved to dismiss under Crim. R. 29(A), which motion was denied. Stirnkorb then rested, moving to dismiss under Crim. R. 29(B), which motion was denied. The action against Stirnkorb resulted in a conviction by the Clermont County Court of Common Pleas in May 1989. The action against the remaining defendants resulted in a mistrial.

[3] As the state points out, "the case was long and exhausting for the prosecutors and heading toward a successful conclusion. Thus, they would have no rational reason to want to repeat the entire process a second time." Moreover, the state vigorously objected to the motion for mistrial by filing an extensive memorandum in opposition to the mistrial.

[4] The *Kennedy/Pool* divergence may be compared to the difference between the purposeful/reckless culpable mental states under criminal law analysis.