Defendant-appellant, Betty Jones, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of involuntary manslaughter and endangering children. Because the trial court erred in permitting the prosecutor to use an undisclosed statement to impeach defendant, we reverse.
By indictment filed May 23, 1997, defendant was charged with one count of involuntary manslaughter in violation of R.C.2903.04, and one count of endangering children in violation of R.C. 2919.22. Both charges arose from the death of defendant's foster child, Tahtijuana, who died in defendant's care on January 23, 1997. On June 5, 1997, defendant entered not guilty pleas to all charges, and on February 17, 1998, a jury trial commenced. The jury found defendant guilty of both counts and defendant was sentenced accordingly. Defendant appeals, assigning the following four errors:
 "I. THE TRIAL COURT ERRED BY PERMITTING THE STATE TO CROSS-EXAMINE THE DEFENDANT REGARDING THE DEFENDANT'S PRIOR STATEMENT THAT WAS NOT DISCLOSED TO THE DEFENDANT.
 "II. THE TRIAL COURT ERRED IN ADMITTING THE AUTOPSY BECAUSE THAT DOCUMENT CONTAINED INADMISSIBLE AND PREJUDICIAL HEARSAY.
 "III. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY THE PROSECUTOR'S IMPROPER COMMENTS DURING CLOSING ARGUMENT.
 "IV. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
In addressing the first assignment of error, defendant argues that because the prosecution failed to provide her prior statement before trial as required under Crim.R. 16(B)(1)(a)(i), the trial court erred in allowing the prosecution to impeach her with that statement. Defendant issued the statement sometime in 1996 as part of a questionnaire she completed for Franklin County Children's Services ("FCCS") when she was attempting to become a foster parent.
The prosecution at the beginning of the trial first raised the issue of FCCS' records and requested that FCCS be required to turn the records over to the prosecution. After a review of the records, the trial court agreed and directed that "if anybody is going to testify and part of their investigation is in this file, I want that made available to the Defense. And my suggestion is for everybody that's going to testify, take out that person's statement so you can be prepared to give those to the other side under Rule 16. Your client [defendant] has a lot of statements in here and I think those ought to all be turned over." (Tr. 157.) The court later reiterated to the prosecution that "I also want you to turn over any statements that the defendant made." (Tr. 160.)
At trial, defendant chose to testify, as did defendant's two children. Both children testified that defendant never physically abused them. Similarly, defendant denied she ever harmed Tahtijuana. On cross-examination, however, the prosecutor attempted to impeach defendant with her prior statement. Defense counsel objected on the grounds that the prosecution had not produced the document, but the trial court overruled the objection, holding that "the application * * * that was not used in direct is being used for this purpose, I assume for impeachment purposes is not something that needs to be turned over under Rule 16 whether you requested it or not." (Tr. 737.)
With that ruling, the prosecutor began to question defendant about the statement:
 "Q. Do you recall telling Franklin County Children Services that you believe in using the rod on your own two children?
"A. No, I don't.
 "Q. Do you remember telling the Franklin County Children Services' investigators who were preparing you to be a foster parent that you used physical discipline if your children lied to you?
"A. No, I don't recall that." (Tr. 738-739.)
Defense counsel again objected, and the trial court again overruled the objection. When the prosecution gave defendant the document that contained her statement, defendant admitted to filling it out in 1996. Citing to Evid.R. 608(B), defense counsel objected to the prosecution's using defendant's statement, and again, the trial court overruled the objection. The prosecution then asked defendant to read her answer under the heading entitled "Discuss the individual's attitudes toward and methods of discipline of children," resulting in the following:
 "Q. Do you believe in using the rod or spanking your children?
 "A. I have been taught by the Bible that there's nothing wrong with it.
"Q. So have you spanked your children then?
 "A. I think I have said that I have spanked my child before but that's not — I don't think — I don't have the type of children where I have had to use spankings. * * *
 "Q. Do you know that losing your control, losing control could lead to child abuse?
"A. I know that.
"Q. And you told Children Services that?
"A. Yes." (Tr. 741-742.)
Crim.R. 16(B)(1) governs pretrial discovery in a criminal case, and provides:
 "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 "(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof[.]"
For the purposes of the rule, a statement includes (1) a written statement actually signed, or otherwise adopted or approved, by a witness or party, (2) a mechanical recording of the witness' words or transcription thereof, or (3) a substantially verbatim recital of such statement in a continuous narrative form. State v. Cummings (1985), 23 Ohio App.3d 40; State v. Johnson (1978), 62 Ohio App.2d 31. Defendant's application to FCCS contained a written statement adopted or approved by defendant, as defendant testified that she filled out the document while applying to become a foster parent sometime in 1996.
Moreover, "Crim.R. 16(B) imposes on the prosecutor a duty to disclose certain information upon a proper discovery request made by the defendant. The rule does not distinguish between whether documents are intended to be used by the prosecutor in its case-in-chief or in cross-examination." State v. Haddix
(1994), 93 Ohio App.3d 470, 473 (finding the state's failure to disclose defendant's tax returns that were used to impeach the defendant violated Crim.R. 16(B)); see, also, State v. Moore
(40 Ohio St.3d 63, 65 (finding implicitly that failure to disclose evidence establishing or impeaching the credibility of defendant could be a violation of Crim.R. 16(B)(1)(a)(i)).
The prosecution therefore was obligated to produce defendant's statement to defense counsel under Crim.R. 16(B)(1)(a), even though the statement was to be used only to cross-examine defendant. While defendant's statement was not in the prosecution's possession until the trial, the continuing duty under Crim.R. 16 required the prosecution to disclose defendant's statement to the defense whenever the prosecution discovered it. Crim.R. 16(D); State v. Finnerty (1989), 45 Ohio St.3d 104,106. Nonetheless, the prosecution's discovery violation in failing to disclose the statement under Crim.R. 16(B) does not necessarily mandate reversal of defendant's conviction.
Crim.R. 16(E)(3) governs the regulation of discovery and permits a trial court to exercise discretion in the selection of the appropriate sanction for a discovery violation. SeeState v. Bidinost (1994), 71 Ohio St.3d 449, 456; State v.Wiles (1991), 59 Ohio St.3d 71, 78. "Reversible error exists only where the exercise of such authority by the trial court constitutes an abuse of discretion." Id.; State v. Apanovitch
(1987), 33 Ohio St.3d 19, 26. "In determining whether the trial court's decision allowing the testimony was an abuse of discretion, we must consider whether the record demonstrates (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement." State v. DeLeon (1991), 76 Ohio App.3d 68,78, citing State v. Parson (1983), 6 Ohio St.3d 442; see, also, State v. Scudder (1994), 71 Ohio St.3d 263, 269
(extending the Parson tripartite test to all cases where there has been a failure to disclose evidence under Crim.R. 16). Unless defendant can show that one of the three prongs is met, the state's failure to disclose defendant's statement will not merit reversal.
While defendant argues that the prosecution's failure was willful, the record does not reflect willfulness. The prosecution received the documents on the day of the trial. When defense counsel first objected to the statement, the prosecution stated that "[w]e gave you everything the judge told us to give you. And preparing for cross-examination we went through everything else we had to find out." (Tr. 737.) Rather than a willful omission, the prosecution's failure appears to arise because it did not notice the statement until the trial was well underway.
Defendant argues under the second prong of Parson that foreknowledge of the statement would have benefited her in preparing her defense. A "bald assertion" that foreknowledge of a statement would have been beneficial is insufficient to demonstrate reversible error. Wiles, supra, at 79; State v.Stambaugh (Oct. 22, 1996), Franklin App. No. 96APC04-475, unreported (1996 Opinions 4172). In Wiles, the defense asserted that had it known earlier of a statement, it would have been able to more adequately attack the credibility of the statement. Standing alone, the "benefit" was insufficient to demonstrate error under Parson. See, also, State v. Logan
(Sept. 30, 1998), Summit App. No. 18958, unreported (finding speculative and insufficient under the second prong of Parsons
defense counsel's statement that the testimony would have entirely changed the nature of the defense); State v. Evilsizor
(Oct. 19, 1994), Champaign App. No. 93-CA-15, unreported (finding that defendant's "bald, nonspecific assertions that his preparation for trial was hampered * * * are insufficient to demonstrate that the trial court committed reversible error").
Defendant, however, points to more than the bald assertions found insufficient in those cases. Defendant argues that knowledge of the statement would have benefited the defense in two specific ways. Initially, defendant would have brought the statement to the attention of the jury in defendant's direct examination and not let the prosecutor "surprise" defendant on cross-examination. Moreover, the defense would have changed its entire trial strategy. Specifically, the defense had already put on the defendant's two children to testify that defendant had never physically abused or disciplined her children. Defendant herself testified that she never harmed the child. Had defendant's statement been disclosed to the defense before trial, or even before defendant's case-in-chief, the children would not have been asked to testify to those facts. Moreover, defendant may have chosen not to testify on her own behalf.
Indeed, in similar circumstances, the Ohio Supreme Court found reversible error in State v. Moore, supra, concluding that an undisclosed recording of the defendant implicating himself would have benefited defendant in planning his defense. The court noted that "[b]ecause the recording was used to impeach appellant's credibility, he was entitled to inspect the tape so he could make an intelligent decision as to whether to testify in his own behalf as the sole witness for the defense. Any evidence impeaching the credibility of the sole witness was of crucial relevance to appellant's defense. The right to plan an adequate trial strategy is precisely what the federal courts * * * recognized as the dominant reason for a broad scope of discovery." Id. at 67 (citations omitted); see, also, State v.Dobbs (June 10, 1996), Highland App. No. 96 CA 875, unreported (finding that an undisclosed tape recording of defendant, which impeached defendant's testimony, "would have benefited appellant in planning and presenting her defense").
Like Moore, defendant's statement concerning her use of corporal punishment with children clearly was used to impeach her testimony as well as her children's testimony. All had previously testified that defendant never beat or abused her children and did not harm Tahtijuana. Defendant's statement undermined that testimony by demonstrating defendant in fact believed in corporal punishment and had punished her own children in such a manner. Foreknowledge of defendant's statement would have allowed her to make a fully informed choice as to whether or not to testify on her own behalf.
The third prong of Parson requires defendant to demonstrate prejudice from use of the statement. No prejudice results "where an objection is made at trial to the admission of nondisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time." Wiles,supra, at 80, citing State v. Edwards (1976), 49 Ohio St.2d 31,42-43; see, also, State v. Stambaugh, supra, at 4177. Here, defense counsel did not request a continuance when the prosecution attempted to use defendant's statement.
Defendant's case does not involve a continuance to allow defense counsel time to adequately prepare a cross-examination of an undisclosed witness. Indeed, a continuance would not have helped defendant, as the testimony of defendant and her two children had already been completed. Any prejudice that occurred as the result of the statement could not have been cured by a continuance. Cf. State v. Evilsizor, supra, (noting that none of the claims of prejudice asserted by defendant could not have been cured by a continuance).
Prejudice from the prosecution's failure to disclose defendant's statement is apparent. While defendant's theory at trial was that the injuries sustained by Tahtijuana were caused by people other than defendant, defendant also attempted to show that defendant did not physically abuse children. Defendant accomplished that end through the testimony of defendant's two children and her own testimony. Defendant's statement undermined her defense, forcing defendant to admit that she would and in fact had physically disciplined her children. In the final analysis, defendant's credibility was a main issue, and because she basically argued that she did not and could not harm the child, her admission seriously damaged her credibility and therefore was prejudicial.
Because knowledge of the nondisclosed statement would have benefited defense preparation, and because prejudice resulted to defendant from the use of the nondisclosed statement, defendant's first assignment of error is sustained. Our disposition of defendant's first assignment of error renders defendant's other assignments of error moot and we decline to rule on them. App. R. 12(A). Having sustained defendant's first assignment of error, however, we reverse the judgment of the trial court and remand for a new trial.
Judgment reversed and case remanded.
BOWMAN, J., and LAZARUS, P.J., concur.