**The STATE of Ohio, Appellee,**

**v.**

**GLANDER, Appellant.**

[Cite as *State v. Glander* (2000), 139 Ohio App.3d 490.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA99–12–024.

Decided Oct. 16, 2000.

*Rebecca J. Ferguson,* Preble County Prosecuting Attorney, and *Martin Votel,* Assistant Prosecuting Attorney, for appellee.

*Herbert J. Haas,* for appellant.

---

POWELL, Presiding Judge.

Defendant-appellant, Kenneth Glander, was convicted of criminal damaging or endangering after a jury found that he threw a rock at the windshield of a car driven by Richard Knott. For the following reasons, we reverse.

On November 27, 1998, twenty-year-old Richard Knott, his cousin, Steve Dalton, and two friends, Gary Dursch and Jeremy Shock, decided to go to Fudge Road in Preble County, Ohio. Knott, who had driven Fudge Road many times, told Shock that there was a woman who would chase them off the road, as she had many times before. Dursch had also heard stories that a bridge on the road called Cry Baby Bridge was haunted. Appellant, a resident who farmed along Fudge Road, had seen the boys drive the road many times, irritating residents with screaming, horn blowing, and acts of vandalism. Knott had previously met appellant, who twice told him to stay off Fudge Road.

That night at approximately 10:00 p.m., the boys went to Fudge Road. Knott drove his car, a 1995 Ford Escort. Dursch rode in the car's passenger seat while Shock rode in the back. Dalton drove his own Mazda RX7 to Fudge Road, and Eric Engleman rode with him. The boys entered Fudge Road from Enterprise Drive, with Knott's car in the lead and Dalton following behind. Fudge Road curves around and ends at Route 503, and Knott followed the road.

When he reached Route 503, Knott turned around in a driveway and let Dalton precede him. Just before a bridge, Dalton came upon a Cadillac headed in the same direction and moving very slowly. The Cadillac stopped on the bridge, blocking the other cars' way. Shock wrote down the Cadillac's license plate number. Dalton attempted to force the Cadillac to move by pulling forward quickly, then slamming on his brakes. Dalton did this maneuver at least twice, but the Cadillac did not move.

Knott, whose car sat behind Dalton's on the road, turned around to leave. Dalton waited behind the Cadillac, which eventually moved so that he could pass. Meanwhile, Knott proceeded down Fudge Road, driving toward Route 503. As Knott drove at approximately thirty m.p.h., the three boys in the car saw appellant walking along the side of the road. Since Knott had previously met appellant, he recognized appellant's face.

Appellant, who according to witnesses wore green coveralls and an orange hat, raised his arm and threw a rock at the windshield of Knott's car. Knott swerved,

and the windshield cracked in a spiderweb pattern. Knott drove immediately to a gas station on Route 503, where he called the Preble County Sheriff's Office and reported the incident. Deputy Andrew Schmidt responded to the call. The boys described the incident with the Cadillac that had blocked their way just minutes before the rock had been thrown, and gave Deputy Schmidt the Cadillac's license plate number. The license plate number was registered to Marsha Steel, appellant's friend, neighbor, and part-time employer.

Deputy Schmidt drove to Steel's address on Fudge Road to investigate the incident. When he arrived at the Steel residence at approximately 11:23 p.m., appellant was standing in the driveway. Appellant wore dark coveralls, a green hat, and a bright orange hooded sweatshirt. Deputy Schmidt asked appellant if he knew anything about the incident on Fudge Road, and if he had thrown a rock at a car's windshield. Appellant replied that he had not thrown the rock, stating that he had been plowing the field. Although the deputy had refused to state who made the complaint, appellant asked the deputy if Knott was the person who had reported the incident. Appellant identified Knott by name and stated that Knott had been stalking the residents of Fudge Road.

The state charged appellant with criminal damaging or endangering, a first-degree misdemeanor.[1] Appellant filed a discovery request asking to inspect or copy relevant written or recorded statements made by him. The relevant portion of the summary the state provided to appellant in response to his discovery request is as follows:

"[T]he defendant was asked if he threw something at a car on Fudge Road; that the defendant stated no, he had been plowing the field behind the house; that the defendant was asked if Marsha Steel was at home and the defendant stated no; that the defendant stated that before he gave a statement he wanted to talk to his lawyer; that the defendant stated that he would give a statement at the Sheriff's Office on Saturday."

In the summary, the state did not include appellant's statement identifying Knott by name as the person filing the complaint and stalking Fudge Road residents.[2]

The day before trial, however, the state disclosed to the defense the identifying statement that appellant had made to Deputy Schmidt on the night of the incident. At appellant's trial, Deputy Schmidt testified about appellant's statements. Appellant objected on ground that the state had not timely provided the identifying statement in its summary, as it was required to do under Crim.R. 16.

---

1. R.C. 2909.06(A)(1).

2. This statement will be hereinafter referred to in this opinion as the "identifying statement."

The trial court overruled appellant's objection. Deputy Schmidt then testified that appellant had asked him if "Richard Knott" was the person who had reported the incident, and had stated that Knott had been stalking Fudge Road residents.

Appellant testified at his trial. Appellant explained that he had repeatedly seen Knott driving on Fudge Road and recognized Knott. Appellant also testified that Knott was only one of many people he had seen repeatedly driving up and down Fudge Road.

The jury convicted appellant of the crime. The trial court sentenced him to serve twenty days in jail, with ten days suspended subject to unsupervised probation.

Appellant filed a motion for a new trial under Crim.R. 33. In his motion, appellant cited the state's failure to provide the identifying statement as grounds for a new trial. The trial court noted that the statement had been brought to defense counsel's attention in chambers before trial, and appellant had access to the statement and an opportunity to investigate because he had himself made it. The trial court denied appellant's motion for a new trial.

Appellant now appeals, raising five assignments of error. Because we reverse appellant's conviction, we address only his second assignment of error and consider the remaining assignments moot.

Assignment of Error No. 2:

"The court improperly permitted the prosecutor to examine Deputy Schmidt about a statement made by appellant, Kenneth Glander, in violation of Criminal Rule 16. The prosecutor did eventually disclose a summary of the defendant Kenneth Glander's statement, however, the summary was a partial and incomplete summary and the state should be precluded from using elicited testimony contained in said summary."

Appellant claims that the trial court improperly allowed Deputy Schmidt to testify about the identifying statement appellant allegedly made that the state did not disclose in the summary it provided him pursuant to Crim.R. 16. Appellant argues that the state's nondisclosure affected his defense by impacting his decision to testify and prejudicing his ability to explain his identification of Knott.[3]

---

**3.** Appellant's fourth assignment of error, in which he claims the trial court improperly denied his motion for new trial, is also based upon the state's failure to disclose appellant's identifying statement. Although we reverse on the second assignment of error, we note that the trial court's denial of the new trial motion might also have warranted reversal under the standard enumerated in Crim.R. 33. However, since we reverse on the second assignment of

The state counters by explaining that appellant's statement identifying Knott as the victim was inadvertently omitted from the summary by "oversight," so the nondisclosure was not willful. The state also responds that foreknowledge of the statement would not have assisted appellant in his trial preparation and that the statement was merely cumulative so that no prejudice resulted when it was omitted from the summary.

■ Crim.R. 16 is mandatory in nature. *State v. Tomblin* (1981), 3 Ohio App.3d 17, 18–19, 3 OBR 18, 19–20, 443 N.E.2d 529, 530–532. It provides that the state must disclose the substance of a defendant's statement to the defense:

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure.

"(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;

"(iii) Recorded testimony of the defendant or co-defendant before a grand jury."

■ While the state is required to disclose a summary of the defendant's statement, the state is not required to disclose police records; such records are beyond the scope of Crim.R. 16. See *State v. Simmons* (1993), 87 Ohio App.3d 290, 292–293, 622 N.E.2d 22, 24–25. Moreover, the state is not required to disclose the original of the defendant's statement. *State v. Daws* (1994), 104 Ohio App.3d 448, 474, 662 N.E.2d 805, 821–822. However, the rule imposes certain obligations with respect to discovery on the state, and the state must comply with its letter and spirit or else affirmatively demonstrate its inability to do so. *State v. Robinson,* (Dec. 23, 1981), Hamilton App. No. C–810117, unreported, 1981 WL 10175, at *1.

■ When the state has failed to disclose a defendant's statement, the trial court has discretion to correct the nondisclosure by imposing sanctions. See

error and grant appellant a new trial, we need not decide whether the trial court erroneously denied appellant's motion for a new trial.

*State v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 487–488, 453 N.E.2d 689, 691–692; Crim.R. 16(E). In order to find that the trial court abused its discretion by admitting evidence that the prosecution failed to disclose as required by Crim.R. 16, a reviewing court must determine (1) that the prosecution's failure to disclose was a willful violation of the rule, and (2) that foreknowledge of the statement would have benefited the accused in preparation of his defense, or (3) that the accused was prejudiced by the admission of the statement. *Daws*, 104 Ohio App.3d at 474, 662 N.E.2d at 821–822; see, also, *Parson*, 6 Ohio St.3d at 445, 6 OBR at 487–488, 453 N.E.2d at 691–692.

█ There is no question that the state provided appellant with a summary of his statement that did not include the identifying statement. The state claims that the statement it provided was "complete, except for" the identifying statement. Crim.R. 16, however, does not require a "complete" summary; it requires that the state disclose "relevant written or recorded statements made by the defendant," and "written summaries of *any* oral statement." (Emphasis added.)

█ We recognize that other courts have held that Crim.R. 16 does not require a "verbatim transcript" detailing the specifics of every remark made by the defendant but only a summary sufficient for the defendant to pursue further details of the statement in preparation of his defense. *Daws*, 104 Ohio App.3d at 474, 662 N.E.2d at 821–822, citing *State v. Maynard* (Nov. 22, 1985), Wood App. Nos. WD–84–98 and WD–85–3, unreported, 1985 WL 8230, at *4. That the state may provide a summary, however, does not mean that the state may selectively edit the statements it provides. As the Ohio Supreme Court has held, it is not within the province of the state to determine, and then to provide, only those statements that the state believes relevant to the defense. *State v. Moore* (1988), 40 Ohio St.3d 63, 68, 531 N.E.2d 691, 696–697.

The summary the state provided omitted appellant's identifying statement. By failing to provide appellant's relevant statements, the state violated Crim.R. 16. The question, however, is whether the record shows that the state *willfully* violated the rule such that the trial court erred by admitting Deputy Schmidt's testimony reciting appellant's undisclosed statement.

█ We first note that the state's failure to include this statement in the summary is inexplicable. Appellant's undisclosed statement identifying Knott as the person who filed the complaint and the person who had been stalking residents on Fudge Road is contained in Deputy Schmidt's police report, along with other statements that the state did disclose.[4] Indeed, the state recognized

---

4. Appellant obtained the police report by way of a public records request after his trial and attached a copy of the report to his motion for new trial.

that the identifying statement should have been provided to appellant in the summary by belatedly disclosing appellant's statement the day before trial.

Moreover, appellant's undisclosed statement is incriminating. Appellant's statement identified Knott by name as the person who had filed the complaint although Deputy Schmidt had not so identified him. The deputy testified to this effect at trial. From this testimony, the jury could infer that appellant knew that Knott was the person who had reported the incident because appellant saw Knott when he threw the rock at Knott's car. The statement could have been construed as an indication of appellant's guilt. Indeed, the prosecutor used the statement to this effect in his closing argument. The identifying statement was the only incriminating statement appellant made to the deputy that night.

Given the incriminating nature of appellant's statement and its glaring absence from the summary, we cannot accept the state's unsatisfactory explanation that the statement's omission was nothing more than an "oversight." Instead, we reiterate that the state must comply with Crim.R. 16. The state may not pick and choose the statements that it includes in a summary of the defendant's statements provided to the defense. See *Moore,* 40 Ohio St.3d at 68, 531 N.E.2d at 696–697. Indeed, the state's obligation to provide a summary of "any" statement is minimal compared to the significant consequences that can result from the surprise of nondisclosure. This is especially true where the undisclosed statement is potentially incriminating. We can only find that the state willfully violated Crim.R. 16.

■ Next, we must determine whether foreknowledge of the statement would have benefited appellant in the preparation of his defense, *i.e.,* whether appellant was prejudiced by the eventual admission of the undisclosed identifying statement. Appellant claims that, had he been aware of the identifying statement before trial, it would have affected his decision to testify. Appellant also claims that he would have used a different strategy if he had the identifying statement, that is, he would have shown that he had guessed Knott's identity.

Without compliance with Crim.R. 16, the defense is handicapped in trial preparation, particularly in such critical areas as deciding whether a defendant should waive jury trial and whether he should take the stand in his defense. *Robinson,* 1981 WL 10175, at *1. The consequence of the prosecution's failure to permit a defendant to inspect his statement is that if the defendant does not know or remember what is contained in the statement, he cannot knowingly and intelligently decide whether to take the witness stand and thus place his credibility at issue. *Tomblin,* 3 Ohio App.3d at 18, 3 OBR at 19–20, 443 N.E.2d at 530–531.

When admitting the identifying statement, the trial court ruled that appellant had access to the statement because he had made it. But appellant claims that he did not make the identifying statement. Further, appellant ultimately made the decision to take the stand to testify in his defense. When he did, the prosecutor cross-examined appellant, eliciting evidence that he had seen several people *other* than Knott on Fudge Road. Appellant's testimony strengthened the prosecution's inference of guilty knowledge from appellant's statement identifying Knott, and no other person, as the complainant.

Under these circumstances, we are satisfied that disclosure of the identifying statement in the summary the state provided would have benefited appellant in preparing his defense and could have affected his decision to take the stand.

We accordingly conclude that the trial court abused its discretion when it admitted Deputy Schmidt's testimony regarding appellant's incriminating statement. *Parson*, 6 Ohio St.3d at 445, 6 OBR at 487–488, 453 N.E.2d at 691–692; *Daws*, 104 Ohio App.3d at 474, 662 N.E.2d at 821–822. Appellant's second assignment of error is well taken.

Judgment reversed and cause remanded for a new trial with instructions for the trial court to determine, before appellant's new trial, whether the identifying statement is admissible evidence.

*Judgment accordingly.*

WILLIAM W. YOUNG, J., concurs.

WALSH, J., dissents.