DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Ronald G. Crosby, appeals the Lucas County Court of Common Pleas' May 13, 2003 judgment, which, following a jury trial, convicted appellant of one count of burglary and sentenced him to six years of imprisonment. For the following reasons, we reverse the trial court's decision.
 {¶ 2} On December 30, 2002, appellant was arrested on suspicion of burglary. The arrest stemmed from a 9-1-1 call that an unoccupied home in south Toledo, Lucas County, Ohio was being burglarized. When the police unit arrived, the victim's neighbor, Paul Walsh, gave a description of the suspect; the police subsequently found appellant hiding under some bushes in the snow. Walsh identified appellant as the assailant.
 {¶ 3} On March 4, 2003, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(2), and one count of possessing criminal tools, in violation of R.C. 2923.24.[1]
Appellant entered a not guilty plea; thereafter, the trial date was set for April 21, 2003.
 {¶ 4} On the morning of trial, a suppression hearing was held as to Walsh's identification of appellant. During the hearing, Toledo Police Officer James Schlievert testified that when he apprehended appellant, appellant explained that he was in the bushes because if the police saw him he "knew what [they] would think." According to Schlievert, appellant stated that after eating at a nearby restaurant, he discovered that his truck had been stolen from the parking lot. Appellant, on foot, discovered his vehicle in the victim's driveway. He ran when he saw the police approaching.
 {¶ 5} Following Schlievert's testimony, the state indicated that it would not present his remarks during its case-in-chief. However, because appellant wished to testify as to a different, non-illegal reason for being at the victim's house, appellant requested a continuance based on Schlievert's remarks, which were just elicited that morning. The court denied the motion to suppress and denied appellant's request for a continuance.
 {¶ 6} The case proceeded to trial and the following testimony was presented. Paul Walsh, the victim's neighbor, testified that on December 30, 2002, at approximately 5:00 p.m., he observed a man pull into his elderly neighbor's driveway, get out of his vehicle, and ring the doorbell. Walsh did not know if his neighbor was home. The individual then backed out of the driveway, turned around, and backed all the way up the driveway, almost to the garage.
 {¶ 7} At that point, Walsh became suspicious, retrieved a loaded .45 caliber handgun and placed it in the waistband of his pants with his jacket tucked inside so it was visible. Walsh testified that he went to the back of his neighbor's home, entered through the mudroom, which was generally unlocked; Walsh testified that the back door had been broken in. A man approached him from inside the house. Walsh identified appellant as the man that approached him. According to Walsh, appellant stated that the owner was inside and then struck Walsh's jaw with "something hard." Walsh then brandished his gun and appellant ran toward the front of the house.
 {¶ 8} Walsh stated that after appellant ran away, he went outside and removed the keys from the appellant's vehicle, which was running. He looked in the garage and saw that the homeowner's vehicle was gone. Walsh yelled to his wife to call 9-1-1 and then waited for the police to arrive.
 {¶ 9} Walsh gave a description of the individual to the police. Following appellant's arrest, Walsh testified that the police drove him by the police cruiser where appellant was sitting and Walsh positively identified him.
 {¶ 10} The victim/homeowner, Barbara Walker, testified next. Walker stated that on December 30, 2002, at about 4:45 to 5:00 p.m., she was leaving her home to visit her daughter. On her way out, she placed a trash bag and a few items at the curb.
 {¶ 11} Just after arriving at her daughter's, Mrs. Walsh telephoned stating that it appeared as though her home was being burglarized. Walker, accompanied by her daughter, returned to her home. When they arrived, the police were present.
 {¶ 12} Walker testified that a tire iron and a blue pillowcase were in her home; Walker stated that the items were not hers. Walker testified that her back door had been broken in, her secretary drawers were open, and some lights were on.
 {¶ 13} Toledo Police Officer James P. Schlievert testified that when he was en route to the home to assist with the investigation, he heard the broadcast about a fleeing suspect; Schlievert began searching for the suspect, backtracking towards the residence. Schlievert followed fresh footprints in the snow and discovered appellant lying face down under a bush. Appellant was placed into custody.
 {¶ 14} Toledo Police Officer Eric Board was the first to respond to the residence and speak with Walsh. Conflicting with Walsh's testimony, Board stated that Walsh told him that he removed appellant's car keys prior to confronting him. Walsh did not prepare a written statement of the incident; Board prepared his report that evening.
 {¶ 15} Toledo Police Sergeant Mark Evanoff testified that he was called to the home to take photographs of the crime scene. Evanoff identified the photographs he had taken.
 {¶ 16} The state's final witness was Toledo Police Detective Paul Tetuan. Tetuan testified that during his interview with Walsh, Walsh stated that after confronting appellant he removed the keys from his car. Tetuan acknowledged that they did not dust the tire iron for fingerprints; he explained that that type of metal is not conducive to fingerprinting.
 {¶ 17} Appellant then testified that on December 30, 2002, he went to the Kroger store on Glendale Avenue in south Toledo, Ohio. After leaving the store, and due to heavy traffic, he took an alternate route cutting through a side street from Heatherdowns to Glendale Avenues in order to reach Airport Highway, the route to his sister's home in Swanton. Appellant was taking a belated Christmas gift to his nephew.
 {¶ 18} Appellant testified that on the side street he saw a woman placing trash by the curb; the trash included a cardboard box he felt would make a good litter box for his cat. After she left, he pulled into the driveway. Appellant honked his horn and no one came to the door. Appellant testified that he then went up to the door and rang the doorbell or knocked, still no one came to the door. His intent was to ask if he could take the box for his cat.
 {¶ 19} Appellant testified that he backed out of the driveway and then noticed that the garage door was open. He turned around and backed up the driveway up to the garage door. Once he realized the no one was home, appellant was preparing to get back in his car when he spotted Walsh running toward him with a gun in his hand Appellant testified that he panicked and ran inside the enclosed porch.
 {¶ 20} According to appellant, while he was standing on the enclosed porch, he observed Walsh remove the keys from his truck. Appellant then forced the back door open and ran into the house. When Walsh came in the door after him, appellant pushed him and ran out the front door.
 {¶ 21} Eventually, appellant headed back toward his car to see if the police had arrived. When he determined that they were not there, he went back and hid. At this point, officer Schlievert apprehended him. Appellant testified that he did not say anything to Schlievert following his arrest. Appellant admitted that he had convictions for aggravated burglary, burglary, and theft.
 {¶ 22} On cross-examination, appellant denied telling Schlievert that his truck had been stolen from Rudy's restaurant and that he was looking for it in the neighborhood. Appellant also denied telling Walsh that Ms. Walker was in the house.
 {¶ 23} Called as a defense witness, Detective Tetuan testified that he had been subpoenaed to get the gift that appellant had in his car at the time it was impounded. Tetuan positively identified the wrapped package.
 {¶ 24} During the state's rebuttal, Officer Schlievert testified that appellant, in response to his question of why he was in the bushes, stated that someone had stolen his truck from Rudy's and he was looking for it. Appellant explained to Schlievert that when he heard the police coming he went and hid because he knew what they would think. Schlievert admitted that he did not put this statement in his report.
 {¶ 25} After the close of the evidence, appellant requested that the jury be instructed on the necessity defense. The trial court denied the request. Appellant was found guilty of burglary and commenced the instant appeal.
 {¶ 26} Appellant now raises the following assignments of error:
"Assignment of Error No. 1
 {¶ 27} "Appellant met the requirements for necessity defense, the trial court committed prejudicial error in refusing to instruct the jury on affirmative defense of necessity.
"Assignment of Error No. 2
 {¶ 28} "It was prejudicial error for the trial court to allow the state to impeach appellant with prior undisclosed statements."
 {¶ 29} Appellant's first assignment of error asserts that the trial court committed prejudicial error when it refused to give the necessity jury instruction. A trial court is required to give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and fulfill its duty as the factfinder. State v. Comen (1990), 50 Ohio St.3d 206, 210. A court may refuse to give an instruction that is not applicable to the evidence in the case, or which is incorrect. State v. Cross
(1979), 58 Ohio St.2d 482, 488. A reviewing court will not reverse the trial court's decision relating to whether sufficient facts existed to support a jury instruction absent an abuse of discretion. State v. Endicott (1994), 99 Ohio App.3d 688, 693.
 {¶ 30} The defense of necessity excuses a criminal act when the harm which results from compliance with the law is greater than that which results from a violation of the law.
 {¶ 31} Cleveland v. Sundermeier (1989), 48 Ohio App.3d 204,207. Necessity is not a defense if alternatives to the criminal act existed. Id., citing Cleveland v. Sabo (May 14, 1981), 8th Dist. Nos. 41999 and 42004. Additionally, necessity is an affirmative defense. Thus, "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).
 {¶ 32} The necessity defense contains the following elements:
 {¶ 33} "(1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than (or at least equal to) that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designated to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm." (Citation omitted)Kettering v. Berry (1990), 57 Ohio App.3d 66, 68. Accord,State v. Prince (1991), 71 Ohio App.3d 694, 699.[2]
 {¶ 34} Denying appellant's request for the instruction, the trial court concluded that because appellant, after seeing the brandished gun and fleeing into the home, returned and physically confronted Walsh, he negated the defense. Upon careful review of the court's reasoning for denying the request and the complete trial transcript, we cannot say that the court abused its discretion when it refused to instruct the jury on the necessity defense. We agree that appellant failed to establish, by a preponderance of the evidence, that the harm threatened was imminent since appellant was confident enough to turn and physically confront Walsh. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 35} In appellant's second assignment of error, he contends that the trial court erroneously permitted the state to impeach appellant with the prior undisclosed statement of Officer Schlievert. Appellant also argues that his trial counsel was ineffective by failing to object to the use of the statements.
 {¶ 36} Crim.R. 16(B) provides, in part:
 {¶ 37} "(B) Disclosure of evidence by the prosecuting attorney:
 {¶ 38} "(1) Information subject to disclosure.
 {¶ 39} "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 40} "* * *;
 {¶ 41} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer; * * *."
 {¶ 42} In the present case, during the suppression hearing held on the morning of trial, Officer Schlievert testified that appellant told him that he was looking for his vehicle, which had been stolen from a nearby restaurant. Schlievert admitted that he failed to put appellant's statement in his written report and failed to mention it to the investigating officer. Arguably, Schlievert's omission was a violation or Crim.R. 16. However, we must now determine whether the trial court abused its discretion by permitting the use of the statement to impeach appellant.
 {¶ 43} Crim.R. 16 grants the trial court discretion in regulating discovery and imposing sanctions for a discovery violation. Crim.R. 16(E)(3) provides:
 {¶ 44} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 45} Generally, a trial court must impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery. Lakewood v. Papadelis
(1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, syllabus.
 {¶ 46} In State v. Parson (1983), 6 Ohio St.3d 442, syllabus, the Ohio Supreme Court set forth the following three-part test to determine whether a trial court abused its discretion under Crim.R. 16(E)(3) by allowing the admission of an unrecorded oral statement by a co-defendant:
 {¶ 47} "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted."
 {¶ 48} The Parson test was later applied by the Ohio Supreme Court, in State v. Bidinost (1994), 71 Ohio St.3d 449,456, as to the admission of an unrecorded oral statement of the defendant.
 {¶ 49} Applying Parson and Bidinost to the case sub judice, we first find that the state did not willfully violate Crim.R. 16(E)(3). Officer Schlievert testified that he did not put the statement in his written report and there is no evidence that the state knew of the statement prior to the suppression hearing.
 {¶ 50} As to the second prong, we must conclude that foreknowledge of the statement would have benefited appellant in the preparation of his defense. The Twelfth Appellate District case captioned State v. Glander (2000), 139 Ohio App.3d 490, cited by appellant, is persuasive. In Glander, the state failed to provide the defendant key portions of his statement until its case-in-chief. The defendant testified and the omitted portions were used against him. Finding that the trial court abused its discretion by admitting the officer's testimony, the court reasoned:
 {¶ 51} "Without compliance with Crim.R. 16, the defense is handicapped in trial preparation, particularly in such critical areas as deciding whether a defendant should waive jury trial and whether he should take the stand in his defense. Robinson, 1981 WL 10175, at *1. The consequence of the prosecution's failure to permit a defendant to inspect his statement is that if the defendant does not know or remember what is contained in the statement, he cannot knowingly and intelligently decide whether to take the witness stand and thus place his credibility at issue. Tomblin, 3 Ohio App.3d at 18, 3 OBR at 19-20, 443 N.E.2d at 530-531.
 {¶ 52} "When admitting the identifying statement, the trial court ruled that appellant had access to the statement because he had made it. But appellant claims that he did not make the identifying statement. Further, appellant ultimately made the decision to take the stand and testify in his defense. When he did, the prosecutor cross-examined appellant, eliciting testimony that he had seen several people other than Knott on Fudge Road. Appellant's testimony strengthened the prosecution's inference of guilty knowledge from appellant's statement identifying Knott, and no other person, as the complainant.
 {¶ 53} "Under these circumstances, we are satisfied that disclosure of the identifying statement in the summary the state provided would have benefited appellant in preparing his defense and could have affected his decision to take the stand" Id. at 497-498.
 {¶ 54} In the present case, appellant's defense was that he broke into the victim's home to escape the gun-toting neighbor. Officer Schlievert's testimony that appellant stated that he was in the neighborhood because his car had been stolen completely undermined appellant's prepared testimony. Because appellant did not have the benefit of the statement, he could not knowingly and intelligently decide whether to take the witness stand and place his credibility at issue. State v. Tomblin (1981),3 Ohio App.3d 17, 18-19; State v. Watters (1985), 27 Ohio App.3d 186,188. Thus, we find that appellant was denied his right to a fair trial and appellant's second assignment of error is well-taken.
 {¶ 55} On consideration whereof, we find that appellant was prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is reversed. The matter is remanded for a new trial. Pursuant to App.R. 24, court costs of this proceeding are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Pietrykowski, J., Lanzinger, J., Concur.
[1] At trial, a directed verdict was granted as to the count of possessing criminal tools.
[2] We note that though we believe that the more appropriate jury instruction would have been the affirmative defense of duress, see City of Dayton v. Thornsbury (Sept. 11, 1998), Case Nos. 16744, 16772, we acknowledge that the Supreme Court of Ohio has indicated that the defenses of duress and necessity are often used interchangeably. State v. Cross (1979), 58 Ohio St.2d 482. Even assuming that appellant had requested the duress instruction, our decision would remain unchanged.