DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Paul Hyslop, appeals the October 15, 2003 judgment of the Lucas County Court of Common Pleas, which sentenced appellant to four years of imprisonment following his conviction for one count of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(c). For the following reasons, we affirm the trial court's judgment.
 {¶ 2} On April 14, 2003, appellant and co-defendant, Yolanda Elizondo, were indicted on one count of possession of cocaine, a third degree felony. Appellant was arraigned on May 14, 2003, and entered a not guilty plea.
 {¶ 3} On June 4, 2003, appellant filed a motion to suppress all evidence obtained from the April 2, 2003 search "of the Defendant's home". Appellant argued that the search was illegal because it was conducted without a warrant and that none of the exceptions to the warrant requirement existed. Appellant argued that his alleged consent was not voluntary due to the show of force from the number of police officers surrounding appellant's home. Following a hearing, the court denied appellant's motion.
 {¶ 4} On August 11, 2003, the matter proceeded to trial and the following evidence was presented. Toledo Police Detective Keith Dressel testified that on April 2, 2003, at 2:00 a.m., he knocked on the front door at 129 Steel Street, in Toledo, Lucas County, Ohio. Dressel was accompanied by approximately seven other officers, four at the front door and three hidden in the yard.
 {¶ 5} Dressel testified that they asked appellant and his girlfriend, Yolanda Elizondo, who resided in the home and appellant indicated that he did. Elizondo also admitted that she lived in the home. Defense counsel objected to the testimony arguing that the statement was not provided to the defense as required under Crim.R. 16. The objection was overruled. According to Dressel, the officers then got consent to search the home and the shed at the rear of the property.
 {¶ 6} Dressel stated that he left the residence to search the shed. He did not find anything at that time. Dressel returned to the house and began questioning appellant and Elizondo. While Dressel was speaking with Elizondo, he observed appellant walking toward the rear of the house. Shortly thereafter, Dressel heard yelling from the rear of the house; when he approached the rear from the outside he observed appellant being placed in handcuffs. Dressel testified that Detective Schaller gave him a bag which appeared to contain cocaine. Dressel stated that appellant was yelling that the house and "everything" was Elizondo's.
 {¶ 7} During the search of the home, a digital scale, numerous plastic baggies, a bottle of Inositol (a white powdery substance frequently used to dilute cocaine), ammunition, and a firearm holster were recovered. The officers also discovered a television monitor and a camera that had been mounted to the front of the house, two photographs of appellant in the bedroom at 129 Steel Street, and appellant's state identification card with the Steel Street address.
 {¶ 8} During cross-examination, Dressel was questioned as to why he omitted from his report appellant's statement that the lived at 129 Steel Street. Dressel responded that he did not feel it was important at the time. Dressel also admitted that although he found some mail at the residence, none of the mail was addressed to appellant. Dressel testified that he did not seize appellant's state identification card. He indicated that the field test conducted on the substance in the vacuum cleaner tested positive for cocaine.
 {¶ 9} Toledo Police Detective Alexander Schaller testified that he was assigned to search the barn or shed at the rear of the 129 Steel Street residence. Following the search, he remained at the rear of the property to maintain his anonymity; he works in an undercover capacity.
 {¶ 10} While Schaller was in the rear yard, he observed appellant open the back door and look at a vacuum cleaner stacked on top of some garbage bags near the house. According to Schaller, appellant then looked up, observed Schaller, and "had an expression on his face as if he was a little kid [sic] just got caught with his hand in the cookie jar * * *." Schaller stated that appellant immediately withdrew into the house.
 {¶ 11} Schaller stated that based on the look on appellant's face he knew that there was something in the vacuum cleaner bag. Schaller unzipped the vacuum cleaner bag and observed a baggie which appeared to have white power cocaine in it. Schaller left the baggie in the cloth portion of the vacuum bag. He then called for appellant, grabbed him, told him he was under arrest, and placed handcuffs on him. According to Schaller, appellant stated that the house and "everything" was Elizondo's.
 {¶ 12} Toledo Police Officer Mike Troendle testified that on April 2, 2003, he was called to assist at 129 Steel Street. Troendle stated that he searched the downstairs bedroom and found a gun holster, ammunition, and a state identification card. Over a hearsay objection, Troendle testified that it was appellant's identification card and had the Steel Street address. Troendle also found several plastic baggies and a combination of male and female clothing.
 {¶ 13} Toledo Police criminalist Chadwyck Douglass testified that he conducted multiple tests on the substance recovered from the vacuum cleaner at 129 Steel Street. Douglass determined that the substance was 90.53 grams of cocaine.
 {¶ 14} At the close of the state's case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. Appellant argued that the evidence was insufficient to establish that he possessed the cocaine. The motion was denied.
 {¶ 15} Appellant called Detective Keith Dressel to testify as to two pieces of mail recovered at 129 Steel Street. The letters, with the Steel Street address, each had different addressees, neither appellant nor Elizondo. Dressel also testified that they recovered a letter addressed to Yolanda Hyslop.
 {¶ 16} At the conclusion of the testimony, appellant renewed his Crim.R. 29 motion for acquittal. The motion was denied. Thereafter, appellant was found guilty and sentenced to four years of imprisonment. Appellant commenced the instant appeal and raises the following six assignments of error:
 {¶ 17} "I. There was insufficient evidence to support defendant's conviction of possession.
 {¶ 18} "II. The state committed prosecutorial error by not disclosing defendant's statement pursuant to defendant's Crim.R. 16 request for discovery.
 {¶ 19} "III. The trial court erred by admitting hearsay evidence.
 {¶ 20} "IV. The trial court erred in denying defendant's motion for acquittal.
 {¶ 21} "V. The trial court erred denying defendant's motion to suppress.
 {¶ 22} "VI. Defendant's sentence violated his constitutional right to have a jury decide his sentence."
 {¶ 23} Prior to discussing whether the evidence was sufficient to support appellant's conviction, we must first address the admissibility of certain evidence. Appellant's second assignment of error contends that the state violated Crim.R. 16 by failing to disclose appellant's statement. In his third assignment of error, appellant argues that the court erred by admitting hearsay evidence.
 {¶ 24} In appellant's second assignment of error, he argues that the state erroneously failed to provide him a written summary of appellant's alleged statement to a police officer that he resided at the Steel Street address. Crim.R. 16(B) provides, in part:
 {¶ 25} "(B) Disclosure of evidence by the prosecuting attorney:
 {¶ 26} "(1) Information subject to disclosure.
 {¶ 27} "(a) Statement of a defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 28} "* * *
 {¶ 29} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer; * * *."
 {¶ 30} During the trial in this matter, Detective Keith Dressel testified that when he and the officers arrived at 129 Steel Street, appellant and Elizondo indicated they lived at the residence and gave permission to search the home and the curtilage. Appellant's counsel objected to the statement that appellant lived at the home because, in contravention of Crim.R. 16, the state failed to disclose the statement. The court overruled the objection and the testimony was allowed. Upon review, we conclude that the omission of the statement was a violation of Crim.R. 16. However, we must now determine whether the trial court abused its discretion by permitting the state's use of the statement.
 {¶ 31} Crim.R. 16 grants the trial court discretion in regulating discovery and imposing sanctions for a discovery violation. Crim.R. 16(E)(3) provides:
 {¶ 32} "If at anytime during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 33} Generally, a trial court must impose the least severe sanction for a discovery violation that is consistent with the purposes of the rules of discovery. Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 5.
 {¶ 34} In State v. Parson (1983), 6 Ohio St.3d 442, syllabus, the Ohio Supreme Court set forth the following three-part test to determine whether a trial court abused its discretion under Crim.R. 16(E)(3) by allowing the admission of an unrecorded oral statement by a co-defendant:
 {¶ 35} "Where, in a criminal trial, the prosecution fails to comply with Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted."
 {¶ 36} The Parson test was later applied by the Supreme Court of Ohio, in State v. Bidinost (1994), 71 Ohio St.3d 449, 456-457, as to the admission of an unrecorded oral statement of the defendant. ApplyingParson and Bidinost to the instant case, we first find that the state did not willfully violate Crim.R. 16(E)(3). During cross-examination Detective Dressel testified that he did not put appellant's statement in his written report; further, there is no evidence that the state had knowledge of the statement.
 {¶ 37} Unlike this court's decision in State v. Crosby, 6th Dist. No. L-03-1158, 2004-Ohio-4674, we cannot conclude, as to the second Parson
prong, that foreknowledge of appellant's statement would have benefited appellant's defense. In Crosby, the statement at issue was in direct conflict with the defendant's planned necessity defense. Id. at ¶ 54. We concluded that foreknowledge of the statement had a direct bearing on the defendant's decision to testify and place his credibility at issue. Id.
 {¶ 38} In the present case, appellant contends that prior knowledge of the statement would have allowed him and his attorney to fully evaluate the case and appropriately prepare for trial. However, appellant does not suggest that knowledge of the information would have affected counsel's trial strategy. Appellant's counsel thoroughly cross-examined Dressel regarding that omission of appellant's statement in the police report.
 {¶ 39} Finally, as to the third Parson prong, appellant has failed to demonstrate that he was prejudiced by the state's failure to disclose the statement. Again, appellant does not suggest that prior knowledge of the statement would have altered his defense strategy. Further, appellant's counsel failed to request a continuance which suggests that appellant was prepared to proceed. State v. Bidinost, 71 Ohio St.3d at 457.
 {¶ 40} Based on the foregoing, and although the state did violate Crim.R. 16, we find that the trial court did not err by permitting Detective Dressel's testimony. Appellant's second assignment of error is not well-taken.
 {¶ 41} In his third assignment of error, appellant contends that the trial court erroneously permitted Officer Troendle's hearsay statement regarding the information written on appellant's Ohio identification card. The state counters by arguing that a police officer is permitted to testify as to his observations during an investigation; that appellant failed to object to the initial presentation of the evidence; and that Troendle's testimony is admissible hearsay as a present sense impression, Evid.R. 803(1), and as a self-authenticating record of a regularly conducted business activity, Evid.R. 803(6).
 {¶ 42} We first note that appellant's failure to initially object to the testimony regarding the information on the identification card does not limit our examination on appeal to plain error. Appellant's counsel did object to the testimony and properly stated the basis of the objection. At that time, the trial court had the ability to cure any prejudice resulting from the testimony by, e.g., instructing the jury. Accordingly, the objection preserved the issue for appeal.
 {¶ 43} We find it clear that the testimony regarding the information on the state identification card was hearsay. Hearsay is defined as a statement made by someone other than the declarant (here, the identification card) while testifying a trial, offered in evidence to prove the truth of the matter asserted. Evid.R. 801. Testimony of the information on the state identification card was presented to establish that appellant lived at the Steel Street address, evidence that appellant lived there aided the state in establishing constructive possession. Despite the fact that the testimony was hearsay, it may be admissible if it falls within one of the exceptions to the exclusionary rule.
 {¶ 44} The state first argues that the testimony is admissible under the present sense impression exception. Evid.R. 803(1). As cited by appellant and set forth in the Staff Note to the rule:
 {¶ 45} "Present sense impressions are those declarations made by an observer at the time the event is being perceived. The circumstantial guaranty of trustworthiness is derived from the fact that the statement is contemporaneous and there is little risk of faulty recollection, and it is made to another who is capable of verifying the statement at the time it is made."
 {¶ 46} Based on the foregoing and upon review of relevant case law, we conclude that the present sense impression exception is inapplicable to the facts of this case.
 {¶ 47} Next, the state asserts that the state identification card was admissible as a record of a regularly conducted activity, Evid.R. 803(6), and is a self-authenticating official publication under Evid.R. 902(5). In order for the identification card to have been admissible there either had to be testimony from an individual who had personal knowledge of the source of the record or, the document must be self-authenticating. We agree with the state that the state identification card is a self-authenticating document. However, in order for the card to be self-authenticated, it must be admitted into evidence. See City of Sheboygan v. Schaefer (Wis.App. 1990), 468 N.W.2d 32. It is undisputed that the card was not offered into evidence in this case. Thus, testimony as to the contents of the card was inadmissible hearsay.
 {¶ 48} Though we find that the trial court erroneously admitted the testimony of the information on the state identification card, we conclude that the error was harmless. As will be discussed, infra, even absent the hearsay testimony, sufficient evidence was presented to establish that appellant possessed cocaine. Appellant's third assignment of error is not well-taken.
 {¶ 49} The court will next address appellant's first and fourth assignments of error together as they are interrelated. In his first assignment of error, appellant argues that his conviction was not supported by sufficient evidence. In his fourth assignment of error, appellant argues that the trial court erred in denying his motion for acquittal.
 {¶ 50} Crim.R. 29(A) provides that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus, "the test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same as in reviewing a challenge based upon on the sufficiency of the evidence to support a conviction." State v. Thompson
(1998), 127 Ohio App.3d 511, 525.
 {¶ 51} In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. State v. Jones
(2000), 90 Ohio St.3d 403, 417, 2000-Ohio-187, citing Jackson v.Virginia (1979), 443 U.S. 307, 319, and State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. On review for sufficiency, courts are not to assess whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J. concurring).
 {¶ 52} Appellant was convicted of possession of cocaine. R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance", including cocaine. "Possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 53} Possession may be actual or constructive. Because the police found no cocaine on appellant's person, the state must prove that he constructively possessed the cocaine found in the vacuum cleaner. Constructive possession is shown when a person "knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Hankerson (1982),70 Ohio St.2d 87, syllabus. See, also, State v. Wolery (1976),46 Ohio St.2d 316, 329, and State v. Haynes (1971), 25 Ohio St.2d 264,269-270. While close proximity to contraband is insufficient alone to prove constructive possession, it can be used as circumstantial evidence to establish constructive possession. State v. Chapman (1992),73 Ohio App.3d 132, 138. Further, knowledge of illegal goods on one's property is sufficient to show constructive possession. State v.Hankerson, 70 Ohio St.2d at 91.
 {¶ 54} The state presented the following, admissible evidence to demonstrate that appellant lived at the residence and, thus, tended to show that appellant possessed the cocaine. First, appellant answered the door upon the arrival of the police. According to Officer Dressel, appellant stated that he lived at the residence. Male and female clothing were found in the bedroom as were photographs of appellant taken in the bedroom of the Steel Street residence. A letter was found addressed to Yolanda (the co-defendant's first name) Hyslop.
 {¶ 55} More compelling than the evidence regarding appellant's residence, were appellant's actions on the night of the search. Detective Schaller testified that appellant came out the back door and looked out at the vacuum cleaner. He then looked at Schaller like a "little kid [that] just got caught with his hand in the cookie jar * * *." Appellant's suspicious actions tended to show that he had control over the cocaine.
 {¶ 56} Accordingly, while the evidence that appellant possessed cocaine was not overwhelming, construing such evidence in favor of the state we find that it was sufficient to sustain appellant's conviction and defeat appellant's motion for acquittal. Appellant's first and fourth assignments of error are not well-taken.
 {¶ 57} Appellant's fifth assignment of error contends that the trial court erroneously denied his motion to suppress. Specifically, appellant states that the search was warrantless and that there were no applicable exceptions to the warrant requirement.[1] The state claims, and the trial court agreed, that the parties consented to the search.
 {¶ 58} When determining a motion to suppress, a trial court assumes the role of the trier of fact and, therefore, is in the best position to resolve factual questions and to evaluate the credibility of witnesses.State v. Vance (1994), 98 Ohio App.3d 56, 58. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, an appellate court must determine as a matter of law, de novo, whether the facts meet the applicable legal standard. Id.
 {¶ 59} Searches and seizures conducted without a warrant are per se unreasonable, subject to certain established exceptions. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219. Consent to search is one exception to the warrant requirement. Id. However, a search based on consent constitutes a waiver of an individual's Fourth Amendment rights and therefore requires more than a mere expression of approval, it must be demonstrated by the totality of all the surrounding circumstances that consent to search was freely and voluntarily given. Schneckloth at 248-249. The state must prove by "clear and positive evidence" that appellant voluntarily consented to the warrantless search. Id. at 222. "Clear and positive evidence" has been held to be equivalent to clear and convincing evidence. State v. Danby (1983), 11 Ohio App.3d 38, 41.
 {¶ 60} In this case, clear and positive evidence exists demonstrating that appellant consented to the search. At the suppression hearing, Detective Dressel testified that both appellant and Elizondo gave permission to search the home; their only request was that the officers "didn't tear the house up." Similarly, Detective Navarre testified that appellant and Elizondo gave permission to search with the caveat that the officers not "tear the house up." Appellant testified that he did not give permission to search.
 {¶ 61} Based on the foregoing, and deferring to the trial court's determination as to the credibility of the testimony, we cannot say that the trial court erred when it denied appellant's motion to suppress. Appellant's fifth assignment of error is not well-taken.
 {¶ 62} In appellant's sixth and final assignment of error, he argues that the United States Supreme Court's recent decision in Blakely v.Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, may apply to appellant's sentence. Based on the authority of this court's recent decision captioned State v. Curlis, 6th Dist. No. WD-04-032, 2005-Ohio-1217, we find that Blakely is inapplicable to Ohio's sentencing scheme. Accordingly, appellant's sixth assignment of error is not well-taken.
 {¶ 63} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.
[1] We note that contrary to his assertion at trial, at the suppression hearing, and on appeal, in his June 4, 2003 motion to suppress, appellant states that he resided at 129 Steel Street.