OPINION
{¶ 1} Defendant-Appellant, Anthony D. Mason, appeals his convictions and sentence in the Butler County Court of Common Pleas for aggravated murder, aggravated burglary, and felonious assault. We affirm the convictions.
 {¶ 2} The evidence presented by the state at appellant's jury trial reveals the following: In February 2003, Angela Tuerley began living with her mother, Janie Tuerley, in an apartment on Northwest Boulevard, in the city of Hamilton. Prior to that, Angela cohabited with appellant in Elsmere, Kentucky.
 {¶ 3} On February 20, 2003, Angela obtained a domestic violence protection order against appellant in the District Court of Kenton County, Kentucky. The order restrained appellant from having any contact or communication with Angela, her family, and her household.
 {¶ 4} On March 18, 2003, Angela swore out an affidavit stating that on March 15, 2003, appellant had violated the protection order by calling her on the telephone. The affidavit also states that Angela believed appellant had vandalized her vehicle. A hearing to determine whether appellant had in fact violated the order was scheduled for May 14, 2003.
 {¶ 5} On the afternoon of May 13, 2003, appellant went to Janie and Angela's apartment complex on Northwest Boulevard. He spoke with Janie in the parking lot and indicated to her that he owed Angela some money, and that he was there to give it to her. Janie offered to take the money, but appellant insisted on delivering it himself.
 {¶ 6} Janie continued walking up to her apartment and appellant followed behind her. Upon reaching the entrance, Janie opened the door four or five inches and called to Angela. Appellant then forced his way into the apartment by knocking Janie to the floor. Angela, responding to her mother's call, came down the hallway from the bedroom and yelled out appellant's name. Appellant pulled out a gun, pointed it at Angela, and a struggle ensued.
 {¶ 7} As Angela and appellant fought for control of the gun, Janie attempted to get up from the floor to help her daughter. Appellant hit her on the back of the head with the gun, however, knocking her back to the ground. Appellant was then able to overpower Angela and force her to her knees, holding her down with one hand and holding the gun with the other. He then fired two shots at the back of Angela's head. One bullet entered her brain and the other entered appellant's hand. When the shots were fired, Angela slumped to the ground; Janie began screaming for help; and appellant fled the apartment.
 {¶ 8} A neighbor called 9-1-1, and the police responded. As part of that response, Sergeant Ervin of the Covington Police Department was dispatched to the home of appellant's mother. Sergeant Ervin located appellant there, and noticing the injury to appellant's hand, offered to take him to the hospital. Appellant voluntarily accepted the offer.
 {¶ 9} While receiving treatment at the hospital, appellant was interviewed by Detective Richard Webster of the Covington Police Department, and then by Jim Calhoun of the Hamilton Police Department. In taped statements to both detectives, appellant indicated that all his actions in the apartment were in selfdefense. He stated that he did not shoot anyone and that his injury occurred when he raised his hand to protect himself. When medical personnel finished attending to appellant's injured hand, he was placed under formal arrest.
 {¶ 10} Appellant's trial concluded on April 26, 2004. The jury returned a verdict of guilty on all three counts and a verdict of guilty on two specifications. Appellant was sentenced to life in prison without the possibility of parole for the aggravated murder conviction, and he was given a 23-year consecutive sentence for the aggravated burglary, felonious assault, and specification convictions. This appeal followed, in which appellant raises seven assignments of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "The prosecution engaged in misconduct."
 {¶ 13} In his first assignment of error appellant contends the prosecution failed to properly comply with the rules of discovery. Specifically, appellant contends oral statements he allegedly made when Sergeant Ervin came to his house on the day of the shooting were not disclosed to him prior to trial.
 {¶ 14} Sergeant Ervin testified at trial that when he initially encountered appellant at the house, appellant told him he was "cool," and "I don't have a gun, they were trying to kill me." Appellant contends the state's failure to reveal these statements during discovery constituted a violation of Crim.R. 16, and denied him his Sixth Amendment right to a fair trial.
 {¶ 15} The purpose of discovery is twofold: To allow a defendant to make an intelligent plea, and to ensure the defendant a fair trial by alleviating surprise. State v. Moore (1988) 40 Ohio St.3d 63, 66. When discovery is not conducted pursuant to Crim.R. 16, Crim.R. 16(E)(3) grants a trial court discretion in providing a remedy to the disadvantaged party.
 {¶ 16} Crim.R. 16(E)(3) provides: "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or * * *, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 17} When the prosecution fails to comply with Crim.R. 16 by not disclosing an oral statement made to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted. State v. Bidinost,71 Ohio St.3d 449, 456, 1994-Ohio-465.
 {¶ 18} The state does not dispute that it failed to produce the statement in question; thus, we turn our attention to whether the violation was willful, whether disclosure in compliance with Crim.R. 16 would have benefited appellant, and whether appellant was prejudiced by the violation.
 {¶ 19} Appellant does not contend, and nothing in the record indicates, that the failure to disclose was willful. Appellant has also failed to demonstrate to this court how an earlier awareness of the statement would have aided his preparation. At trial, defense counsel stated only that it "would have been nice" to have the statements earlier. He failed to otherwise indicate what specific benefit the late disclosure of the statement denied him.
 {¶ 20} Finally, appellant has failed to demonstrate, and the record fails to reveal, how he was prejudiced by the violation. The trial court ensured that a copy of the statement was given to defense counsel at the conclusion of Sergeant Ervin's testimony. The court also ordered that a copy of Sergeant Ervin's investigation notes be given to defense counsel; and the trial court offered defense counsel as much time as he needed to prepare to cross-examine Sergeant Ervin. Appellant's defense counsel declined the offer for additional time to prepare. Consequently, we rule appellant's first argument concerning prosecutorial misconduct is not welltaken.
 {¶ 21} Appellant also contends under this assignment of error that the state engaged in prejudicial misconduct during closing arguments.
 {¶ 22} It is well-accepted that the prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v.Liberatore (1982), 69 Ohio St.2d 583, 589. A prosecutor is at liberty to prosecute with earnestness and vigor. Berger v. United States (1935),295 U.S. 78, 88, 55 S.Ct. 629, 633. Nevertheless, a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities. State v. Tibbetts, 92 Ohio St.3d 146, 168, 2001-Ohio-132.
 {¶ 23} It is also improper for a prosecutor to express his or her personal belief as to the credibility of a witness or the guilt of the accused. State v. Smith (1984), 14 Ohio St.3d 13, 14. Moreover, it is improper, and professionally unethical, for a prosecutor, or any attorney, to attack, or make any attempt to disparage the character of, opposing counsel in front of the jury. Id.
 {¶ 24} The test for prosecutorial misconduct is "whether * * * remarks [made by the prosecutor] were improper and, if so, whether they prejudicially affected the accused's substantial rights." State v. Lynch98 Ohio St.3d 514, 537, 2003-Ohio-2284, ¶ 145. The effect of the alleged misconduct must also be judged in the context of the entire trial, and not treated as an isolated incident in an otherwise properly tried case.State v. Poole (1996), 116 Ohio App.3d 513, 524. An appellate court should only reverse a conviction if the effect of the misconduct "permeates the entire atmosphere of the trial." State v. Tumbleson
(1995), 105 Ohio App.3d 693, 699. "The touchstone of [the] analysis is the fairness of the trial, not the culpability of the prosecutor."Lynch, 98 Ohio St.3d at 537, ¶ 145.
 {¶ 25} In the instant case, appellant contends the prosecutor expressed his personal belief as to the credibility of a witness when he informed the jury during closing argument that it had heard credible eyewitness testimony from the victim's mother. The record of the closing arguments reveals the prosecutor stated: "[W]hat we have in this case is credible, honest eyewitness testimony of a mother that saw her daughter's life taken right in front of her eyes * * *."
 {¶ 26} We begin by noting that appellant did not object to the comment at trial, waiving all but plain error under Crim.R. 52(B). Reversing a conviction for plain error should only be done in exceptional circumstances, when necessary to prevent a miscarriage of justice. Statev. Jenks (1991), 61 Ohio St. 3d 259, 282.
 {¶ 27} The prosecutor's statement amounted to expressing personal opinion and vouching for a witness, and was therefore improper. For two reasons, however, we do not find that the comment caused appellant's conviction to be a miscarriage of justice.
 {¶ 28} First, the opinion expressed was not based upon evidence outside the record. A prosecutor's improper comments are considered particularly damaging when they are not supported by the record. See Statev. Stephens (1970), 24 Ohio St.2d 76. Second, the trial court properly instructed the jury concerning closing arguments. While we recognize that there are some cases of prosecutorial misconduct that cannot be cured by a cautionary instruction, the case at bar is not one of them.
 {¶ 29} Appellant also contends the prosecution engaged in misconduct during closing arguments by attacking defense counsel. At one point, the prosecutor stated: "I'm not going to enrage anybody here, maybe [defense counsel] thought I was going to, but maybe he shouldn't think."
 {¶ 30} This statement appears to have been in response to a statement by defense counsel. At the end of his closing argument, defense counsel stated: "Now [the prosecutor is] going to try to enrage your passion and sympathy towards [the victims mother]."
 {¶ 31} It is certainly acceptable for a prosecutor to respond to such a statement by defense counsel. In this case, however, the prosecutor's response to defense counsel's assertion went beyond what is acceptable, and was an improper attempt to lower defense counsel in the eyes of the jury. Nevertheless, in the context of the entire proceedings, we do not find the affect of the prosecutor's statement was to render appellant's trial unfair.
 {¶ 32} In sum, appellant's contentions that we should reverse for prosecutorial misconduct are not well-taken. The first assignment of error is, therefore, overruled.
 {¶ 33} Assignment of Error No. 2:
 {¶ 34} "The court erred in failing to give an instruction on a lesser included offense."
 {¶ 35} In his second assignment of error, appellant contends the trial court erred in not giving the jury an instruction on aggravated murder that included an instruction on a lesser included offense of voluntary manslaughter.
 {¶ 36} For the sake of clarity, we begin by noting that voluntary manslaughter is an inferior degree of aggravated murder, not a lesser included offense. State v. Tyler (1990), 50 Ohio St.3d 24, 37.[1]
Nevertheless, as with a lesser included offense, "a defendant is entitled to an instruction on an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense." Id.
 {¶ 37} The crime of aggravated murder entails knowingly causing the death of another. Id. at 36-37. "Voluntary manslaughter consists of knowingly causing the death of another while under the influence of sudden passion or any sudden fit of rage brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the offender into using deadly force." Id.; R.C. 2903.03(A).
 {¶ 38} Therefore, in order to be entitled to a voluntary manslaughter instruction, it must have been reasonable for the jury to find appellant knowingly caused the death of Angela, but under a sudden passion brought about because of serious provocation. The burden of producing some evidence at trial from which the jury could reasonably make such a finding was on appellant. See State v. Deem (1988), 40 Ohio St.3d 205, 211.
 {¶ 39} In the instant case, appellant offered no evidence that he shot and killed Angela in the heat of passion and because of serious provocation. Appellant's defense was that he did not shoot her. Furthermore, his statement to Detectives Webster and Calhoun indicate that any actions he took were solely in self-defense, not in the heat of passion. Consequently, no reasonable jury could have found him not guilty of aggravated murder, yet guilty of voluntary manslaughter.
 {¶ 40} Appellant's second assignment of error is therefore overruled.
 {¶ 41} Assignment of Error No. 3:
 {¶ 42} "The court should have granted the appellant's motion to suppress statements."
 {¶ 43} In his third assignment of error, appellant contends the trial court erred in denying his motion to suppress statements he made to law enforcement officers. While receiving medical treatment at the hospital, Detectives Webster and Calhoun both interrogated appellant and recorded his statement concerning his encounter with Angela and Janie Tuerley earlier in the day.
 {¶ 44} In order to be admissible as evidence against a defendant, statements made to law enforcement officers must be freely and voluntarily given. See Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515. Under circumstances that constitute custodial interrogation, they must also be made subsequent to the administering ofMiranda warnings. See Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602; State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396.
 {¶ 45} Appellant first argues that his statements at the hospital should have been suppressed because he underwent custodial interrogation without being properly Mirandized. We disagree.
 {¶ 46} The Supreme Court has described custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. at 1612. In determining whether an individual was in custody, the ultimate inquiry is simply whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v.Beheler (1983), 463 U.S 1121, 1125, 103 S.Ct. 3517, 3520.
 {¶ 47} Appellant was not formally arrested until after he gave his statement at the hospital. Where a suspect has not been formally arrested, "the restraint on the suspect's freedom of movement must be significant in order to constitute custody." State v. Coleman, Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23.
 {¶ 48} In this case, no evidence was presented at the suppression hearing indicating appellant was restrained in any way during the interview, or that he was at the hospital receiving treatment against his will. Instead, the circumstances more closely resembled that of a simple interview. An interview, even if conducted at a police station, does not automatically convert an encounter into a custodial situation. State v.Fille, Butler App. No. CA2001-08-066, 2002-Ohio-3879, ¶ 18. See, also,Beckwith v. United States (1976), 425 U.S. 341, 96 S.Ct. 1612 (rejecting the notion that the "in custody" requirement was satisfied merely because the police interviewed a person who was the focus of a criminal investigation). Consequently, informing appellant of his Miranda rights prior to placing him in custody was not required in this case.
 {¶ 49} Appellant also contends that his statement was involuntary and, therefore, even in the absence of a need for Miranda warnings, his statement should have been suppressed. Specifically, appellant contends that Detective Webster improperly induced him to make a statement during the interview at the hospital when he indicated that it would be in appellant's best interest to talk with him.
 {¶ 50} The test for voluntariness is whether, "in light of the totality of the circumstances, the police obtained the incriminating statements by coercion or improper inducement." State v. Arrington
(1984), 14 Ohio App.3d 111, 114. The line to be drawn between permissible police conduct and conduct deemed to induce or tending to induce an involuntary statement depends upon the nature of the benefit to be derived by a defendant if he speaks the truth. Id. at 115.
 {¶ 51} If "the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution[,] or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible." Id. Improper inducements or coercion are not present, however, when the only benefit pointed out to a suspect is that which flows naturally from a truthful and honest course of conduct. Id.
 {¶ 52} Nothing in the record suggests Detective Webster's statement that talking would be in appellant's best interest was anything more than a suggestion that honesty for its own sake was the best course for appellant to follow. Accordingly, appellant's contention that his statement was not voluntary is also not welltaken.
 {¶ 53} The third assignment of error is overruled.
 {¶ 54} Assignment of Error No. 4:
 {¶ 55} "The convictions were against the manifest weight of the evidence."
 {¶ 56} In his fourth assignment of error, appellant contends that his convictions should be reversed because they are against the manifest weight of the evidence presented at trial.
 {¶ 57} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. When determining whether a conviction is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 58} In the instant case, appellant's specific contention is that his version of the events that took place at the victim's home on the day of her death coupled with inconsistencies in the version of events proffered by the state precluded a reasonable jury from finding him guilty. We disagree.
 {¶ 59} The credibility of witness testimony, although considered by this court when reviewing the weight of evidence, is an issue primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. The trial court, not an appellate court, is in the best position to evaluate testimony and determine the credibility of witnesses. Consequently, an appellate court will not find a conviction is against the weight of the evidence merely because the trier of fact believes the testimony of witnesses for the state rather than witnesses for the defense. See State v. Guzzo, Butler App. No. CA2003-09-232, 2004-Ohio-4979, ¶ 13. Accordingly, appellant's contention is without merit, and the fourth assignment of error is overruled.
 {¶ 60} Assignment of Error No. 5:
 {¶ 61} "The court erred in allowing the admission of evidence."
 {¶ 62} In his fifth assignment of error, appellant contends the trial court erred when it admitted into evidence an affidavit and other documents related to the domestic violence protection order obtained by Angela on February 20, 2003.
 {¶ 63} We first note that the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Issa, 93 Ohio St.3d 49, 64,2001-Ohio-1290. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Barnes, 94 Ohio St.3d 21, 23,2002-Ohio-68.
 {¶ 64} In the instant case, the state introduced an affidavit and other court documents wherein Angela accused appellant of violating the domestic violence protection order put in place on February 20, 2003. A hearing on the allegations was set for May 14, 2003, the day after Angela's death. Appellant contends the documents were inadmissible hearsay, introduced only to inflame the passions of the jury. Again, we disagree.
 {¶ 65} Appellant's indictment initially contained two death penalty specifications under R.C. 2929.04(A)(7) and (8). The state initially offered the documents to show appellant violated R.C. 2929.04(A)(8), but that specification was eventually dismissed. Ultimately, the trial court admitted the documents for the reason that they tended to show motive or purpose.
 {¶ 66} The death specification under R.C 2929.04(A)(7) that remained in appellant's indictment required a showing of prior calculation or design. In addition, aggravated murder under R.C. 2903.01(B) required proof that Angela's death was caused purposely. Thus, the affidavit and related documents were properly admitted. The fifth assignment of error is overruled.
 {¶ 67} Assignment of Error No. 6:
 {¶ 68} "The court violated due process by not removing a juror."
 {¶ 69} In his sixth assignment of error, appellant contends that he was denied his right to a fair and impartial jury. Specifically, appellant contends that on the second day of trial a juror admitted to knowing a relative of Janie Tuerley, a key witness for the state, and therefore should have been excused and replaced.
 {¶ 70} A defendant in a state criminal trial has the constitutional right to be tried before a panel of fair and impartial jurors. See Duncanv. Louisiana (1968), 391 U.S. 145, 88 S.Ct. 1444; see, also, Section 10, Article I, Ohio Constitution. Consequently, a jury must decide a case solely on the evidence before it, and not reach its verdict based upon influences outside the courtroom. State v. Taylor (1991),73 Ohio App.3d 827, 831.
 {¶ 71} One potential outside influence on a jury is the prior acquaintance of a juror with a witness who testifies at trial. The mere fact that a juror is acquainted with a witness, however, does not necessarily render that juror impartial. State v. Woodards (1966),6 Ohio St.2d 14, 22.
 {¶ 72} In determining whether to remove or retain a juror who admits to knowing a witness, trial courts are granted broad discretion. SeeState v. Keith, 79 Ohio St.3d 514, 527, 1997-Ohio-367. In addition, when making that determination, a trial court may rely upon a juror's testimony that he or she can and will remain impartial. State v.Herring, 94 Ohio St.3d 246, 259, 2002-Ohio-796. We should assume, moreover, unless a defendant can demonstrate otherwise, that jurors follow their oaths and deliberate only upon the evidence adduced at trial. State v. Durr (1991), 58 Ohio St.3d 86, 91.
 {¶ 73} Upon examination by the trial court, the juror in question stated that the prior acquaintance would have no effect on his decision. In particular, he indicated that if the evidence warranted an acquittal, he could and would render such a verdict. He also indicated that he would follow his oath and deliberate only upon the evidence produced at trial.
 {¶ 74} As appellant has failed to demonstrate from the record that the juror in question failed to follow his oath, we cannot say the trial court abused its discretion in choosing not to remove him. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 75} Assignment of Error No. 7:
 {¶ 76} "The court improperly imposed consecutive sentences."
 {¶ 77} In his seventh and final assignment of error, appellant contends that his rights to due process and a trial by jury were violated when the trial court imposed consecutive sentences based upon findings not made by the jury.
 {¶ 78} Before imposing consecutive sentences, R.C. 2929.14(E)(4) requires a trial court to make specific factual findings related to deterrence, recidivism, and the protection of the public from future harm. The trial court in the instant case made those findings and ordered that appellant's sentences be served consecutively. Consequently, the aggregate length of appellant's sentence exceeded the statutory maximum sentence for each of his separate crimes.
 {¶ 79} Relying on Blakely v. Washington (2004), 542 U.S. ___,124 S.Ct. 2531, appellant contends that when the aggregate length of consecutive sentences imposed by a trial court exceeds the statutory maximum sentence for any of those crimes individually, the findings in R.C. 2929.14(E)(4) necessary to impose those consecutive sentences must be made by a jury.
 {¶ 80} In Blakely, the Supreme Court restated the rule in Apprendi v.New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely at 2536, quotingApprendi at 490.
 {¶ 81} This court has recently held that the term "statutory maximum" as used in Blakely refers only to the maximum sentence for a single crime, "not the maximum aggregate sentence for multiple, separate crimes." State v. Burns, Butler App. No CA2004-05-117, CA2004-05-118, 2005-Ohio-2499, ¶ 3; see, also, State v. Collier, Butler App. No. CA2003-11-282, 2005-Ohio-944. In other words, Blakely and Apprendi only address sentencing limitations for a single crime. "They do not address the validity or appropriateness of sentences for multiple, separate crimes." Collier at ¶ 41.
 {¶ 82} Accordingly, appellant's right to a jury trial pursuant toBlakely was not violated when the trial court judge, and not the jury, made the findings necessary for imposing consecutive sentences. Appellant's seventh and final assignment of error is overruled.
 {¶ 83} Judgment affirmed.
Powell, P.J., and Young, J., concur.
[1] "[A]n offense is an `inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case." State v. Deem (1988),40 Ohio St.3d 205, 209 (emphasis in original). "[A] lesser included offense is an offense having a penalty of lesser degree than the indicted offense and which, as statutorily defined, is necessarily included within such indicted offense." Id. The elements of voluntary manslaughter are contained within the offense of aggravated murder, with the additional mitigating elements of sudden passion and serious provocation. Thus, voluntary manslaughter is properly an inferior degree of aggravated murder, not a lesser included offense. See Tyler, 50 Ohio St.3d at 36-37.